**In re Albert Edward HYER, Jr., Debtor.**

**Bankruptcy No. 92–21587–2.**

United States Bankruptcy Court,
W.D. Missouri.

Aug. 12, 1994.

Levy and Craig, Kansas City, MO.

Daniel M. Zimmerman, Olathe, KS.

Randolph G. Willis, Olathe, KS.

Charles R. Wilson, Overland, KS.

Eric C. Rajala, Overland, KS.

David C. Seitter, Overland Park, KS.

Benjamin Mann, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO.

### MEMORANDUM ORDER GRANTING BANK IV OLATHE, N.A.'s APPLICATION FOR ALLOWANCE OF FEES, COSTS AND CHARGES ON OVERSECURED DEBT

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the application for allowance of fees, costs and charges on oversecured debt filed by Bank IV Olathe, N.A. (Bank) pursuant to the provisions of 11 U.S.C. § 506(b).

#### FACTS

On October 18, 1991, the Bank initiated litigation against the debtor, Albert E. Hyer, Jr., and his wife, Janet P. Hyer, in the District Court of Johnson County, Kansas, to collect on a promissory note executed by Albert and a guaranty of payment executed by Janet. The principal amount due under the note was $16,037.95. The note was secured by 10,000 shares of RMED International, Inc. stock, which was perfected by possession. At the time the lawsuit was filed, the Bank believed the stock had no value.

The promissory note signed by Albert contains the following provision: "The Bank shall, to the extent allowable by law, be entitled to recover reasonable attorneys' fees incurred in the collection of this Note." The

security agreement signed by Albert provides that:

**Attorneys' Fees and Expenses.** If, prior hereto and/or at

any time or times hereafter, Bank shall employ counsel in connection with the execution and consummation of the transactions contemplated by this Agreement or to commence, defend or intervene, file a petition, complaint, answer, motion or other pleadings, or to take any action in or with respect to any suit or proceeding (bankruptcy or otherwise) relating to this Agreement, the Collateral or any other agreement, guaranty, note, instrument or document heretofore, now or at any time or times hereafter executed by Borrower and delivered to Bank, or to protect, collect, lease, sell, take possession of or liquidate any of the Collateral, or to attempt to enforce or to enforce any security interest in any of the Collateral, or to enforce any rights of Bank hereunder, whether before or after the occurrence of any Event of Default, or to collect any of the Obligations, then in any of such events, all of the reasonable attorneys' fees arising from such services, and any expenses, costs and charges relating thereto, shall to the extent allowable by law be part of the Obligations, payable on demand and secured by the Collateral.

The guaranty of payment signed by Janet states:

Guarantors hereby jointly and severally, absolutely and unconditionally, guaranty to you the punctual payment in full at maturity of the principal, interest, and other sums due and to become due from Borrower to you at any time and from time to time from the date hereof on account of any and all obligations, indebtedness, and liability of Borrower to you, whether now existing or hereafter incurred (it being understood and agreed that this Guaranty is a continuing one), whether direct or indirect, or contingent, whether otherwise guarantied or secured, and whether on open account or evidenced by a note, draft, check, or other instrument or document, and all taxes, fees, charges, expenses, and attorneys' fees and costs incurred by you

in connection with any indebtedness of Borrower or in enforcing or attempting to enforce this Guaranty, all of which obligations, indebtedness, and liability are hereinafter referred to as "indebtedness."

On July 21, 1992, Albert filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Kansas. On October 23, 1992, the case was converted to a Chapter 7. The Bank continued the litigation against Janet.

In November 1993, the Bank learned that the value of the RMED stock had escalated. On or about March 7, 1994, the Trustee liquidated the RMED stock. After deducting expenses for brokerage fees, the sale netted $23,096.00. On March 7, 1994, the Trustee issued to the Bank a trustee's check in the sum of $19,020.59, representing the total amount of principal and interest due under the note to that date.

On March 31, 1994, the Bank filed an "Application For Allowance To Bank IV Olathe, N.A. Of Fees, Costs And Charges On Oversecured Debt." The Bank contends that pursuant to 11 U.S.C. § 506(b) and the terms of the promissory note and guaranty of payment it is entitled to recover fees, costs or charges in the sum of $4865.52 incurred in the collection of the indebtedness. The Bank argues that it is entitled to recover this amount whether the attorneys' fees were incurred in pursuit of Albert, the debtor, or Janet, the guarantor. Of this amount, $818.75 was incurred prior to the filing of the bankruptcy petition, while the remaining fees were incurred in pursuit of the civil action against Janet. The Bank seeks payment from the Trustee in the amount of $4075.41, which represents the remaining balance on hand from the sale of the RMED stock. The Bank requests that the remaining $790.11 be allowed as an unsecured claim.

The Trustee objected to the Bank's application for fees, costs and charges. The Trustee admits that the Bank is an oversecured creditor and that the promissory note and security agreement provide for the payment of reasonable attorney fees and fall within the provisions of 11 U.S.C. § 506(b) with respect to any fees incurred by the

Bank against Albert, but objects to the claim for attorneys' fees arguing, in relevant part, that they are not recoverable in Albert's bankruptcy proceeding because they were incurred in the state court action against Janet, the nondebtor guarantor.

On June 13, 1994, the Court approved the sale of the RMED stock, approved the sales commission, and authorized the Bank to receive the payoff of $19,020.59. The Court determined that if recoverable the attorneys' fees claimed by the Bank were reasonable, but took the application for attorneys' fees under advisement and requested that the parties further brief the issue of recoverability.

After receiving the letter briefs from the Bank and the Trustee, it becomes clear that the bone of contention between the parties is the amount of attorneys' fees incurred by the Bank in its continuing litigation against Janet after Albert filed his bankruptcy petition. The Trustee does not appear to contest the Court's finding that the amount of the attorneys' fees incurred by the Bank in its continuing litigation against Janet is reasonable. The Trustee asserts the unreasonableness of the attorneys' fees claimed by the Bank arises from the fact that they were expended by the Bank in litigation against the guarantor. The issue to be resolved is whether the Bank's attorneys' fees incurred in litigation against the guarantor in a Kansas court that are unrecoverable in the Kansas proceeding pursuant to Kansas law are nonetheless recoverable under 11 U.S.C. § 506(b) in the debtor's bankruptcy proceeding.

## DISCUSSION

■ In Kansas, attorneys' fees generally are not allowable as damages in the absence of a statute. *Iola State Bank v. Biggs,* 233 Kan. 450, 662 P.2d 563, 572 (1983). Kan.Stat. Ann. § 58–2312 (1983) bars the enforcement of an attorneys' fee provision in debt instruments. *Credit Union One of Kansas v. Stamm,* 254 Kan. 367, 867 P.2d 285, 288 (1994); *Biggs,* 662 P.2d at 572. This includes provisions for attorneys' fees contained in guaranty agreements in which the guarantor unconditionally promises to pay the indebtedness upon default by the principal. *Biggs,*

662 P.2d at 575. The 1994 Kansas Legislature has amended Kan.Stat.Ann. § 58–2312 (1983) effective July 1, 1994, to allow the inclusion of attorneys' fee provisions in notes, mortgages or other credit agreements. 1994 Kan.Sess. Laws Ch. 276, § 3.

Kansas law in effect at the time Albert and Janet executed the promissory note, security agreement, and guaranty of payment would void the attorneys' fee provisions contained in those instruments. Kan.Stat.Ann. § 58–2312 (1983) would prevent the Bank from recovering its attorney fees in the litigation against Albert or Janet in the state court action. The Bank seeks to recover the attorneys' fees expended in the continuing litigation against Janet pursuant to 11 U.S.C. § 506(b), which provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

■ 11 U.S.C. § 506(b) includes recovery for attorneys' fees when an attorneys' fee provision is included in the debt instrument as long as the fees requested are reasonable. *Unsecured Creditors' Comm. v. Walter E. Heller & Co. Southeast, Inc.,* 768 F.2d 580, 582–85 (4th Cir.1985); *In re Brunel,* 54 B.R. 462, 464 (Bankr.D.Colo.1985). When an oversecured creditor is entitled to enforce a valid contractual obligation for the payment of attorneys' fees, 11 U.S.C. § 506(b) applies whether the attorneys' fees were incurred before or after the filing of the bankruptcy petition. *Lincoln Serv. Corp. v. Holliday,* 60 B.R. 425, 427 (Bankr.N.D.Ill.1986).

■ Suggesting the Court's decision in this case is *In re Amer. Metals Corp.,* 31 B.R. 229 (Bankr.D.Kan.1983). After reviewing the legislative history of 11 U.S.C. § 506(b), case law, and commentators, the Honorable Benjamin E. Franklin in a seminal and well reasoned decision, determined that § 506(b) allows an oversecured creditor to recover attorney fees if they are provided

for in the security agreement, notwithstanding contrary Kansas law. *Id.* at 234–35.

 Here, the Trustee contends that attorneys' fees expended in the Bank's pursuit of the guarantor are not recoverable under 11 U.S.C. § 506(b). However, the terms of the security agreement executed by Albert provide that attorneys' fees incurred in "any action in or with respect to any suit or proceeding (bankruptcy or otherwise) relating to this Agreement . . . or to enforce any rights of Bank hereunder" are recoverable by the Bank. The broad terms of the attorneys' fees provision in Albert's contractual agreement with the Bank permit the Bank to recover its fees expended in the continuing litigation against Janet, who became obligated to pay the debt when Albert defaulted.

In *In re Lederman Enter., Inc.*, 106 B.R. 674, 685 (Bankr.D.Colo.1989), the court recognized that the oversecured creditor was entitled under 11 U.S.C. § 506(b) to recover attorneys' fees incurred in its lawsuit against the individuals who executed guarantees of the debtor's promissory note. The court reduced the fees requested to an amount that was reasonable. *Id.* at 685.

The Trustee attempts to distinguish *In re Lederman* from the present situation asserting that Colorado law allows a lender to recover reasonable costs and fees in connection with foreclosure actions, while Kansas law voids attorney fee provisions in debt instruments. However, *In re Amer. Metals Corp.* held that 11 U.S.C. § 506(b) is not dependent upon state law. 11 U.S.C. § 506(b) allows the recovery of reasonable attorneys' fees to an oversecured creditor if they are provided for in the underlying agreement, which is the case herein.

 The Court finds that the attorneys' fees in the amount of $4865.52 requested by the Bank are reasonable. The Court concludes that the sum of $4075.41 is recoverable by the Bank from the proceeds from the sale of the RMED stock. Any claim by the Bank above the value of the stock is an unsecured claim. See 2 Norton Bankruptcy Law and Practice 2d, § 43:1 (1994). The sum of $790.11 of the attorneys' fees requested is an unsecured claim.

## CONCLUSION

Based on the above discussion, Bank IV Olathe, N.A.'s Application For Allowance of Fees, Costs and Charges on Oversecured Debt is hereby GRANTED. The total sum of $4075.41 now being held by the trustee herein as proceeds from the sale of 10,000 shares of RMED International, Inc. stock shall be paid to Bank IV Olathe, N.A. through its attorney, Daniel M. Zimmerman of Speer, Austin, Holliday & Zimmerman, as a reasonable cost and expense incurred by the Bank. The Bank shall have an unsecured claim on the balance of $790.11.

The foregoing Memorandum Order constitutes Findings of Facts and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

SO ORDERED.