In re HASSEN IMPORTS PARTNERSHIP, Debtor.

Hassen Imports Partnership, Appellant,

v.

KWP Financial VI, Appellee.

BAP No. CC–00–1131–MoPRi.

Bankruptcy No. LA–98–24281–ER.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 20, 2000.

Decided Dec. 21, 2000.

Eric D. Winston, Stutman, Treister & Glatt, Los Angeles, CA, for Hassen Imports Partnership.

Marsha D. Galinsky, Sheppard, Mullin, Richter & Hampton, LLP, Los Angeles, CA, for KPW Financial VI.

Before: MONTALI, PERRIS and RIMEL,[1] Bankruptcy Judges.

### OPINION

MONTALI, Bankruptcy Judge.

A debtor appeals from an order allowing an oversecured creditor's claim; specifically, the debtor argues that the bankruptcy court erred in permitting the creditor to recover a contractual default rate of interest and attorneys' fees for pursuing payment on guaranties, and in denying debtor's request for attorneys' fees for successfully defending a relief from stay motion and an objection to plan confirmation. We AFFIRM in part and REVERSE and REMAND in part.

### I.

### FACTS

Appellant Hassen Imports Partnership ("Debtor") owns certain improved real property on which an automobile dealership operates (the "Dodge Property"). Appellee KWP Financial VI ("KWP") is the successor in interest to the Bank of Tokyo–Mitsubishi, Ltd., Los Angeles Branch (the "Bank")[2] and is the holder of a promissory note ("Note") secured by a deed of trust ("Deed of Trust") encumbering the Dodge Property. As admitted by Debtor's counsel in oral argument before the bankruptcy court, the value of the Dodge Property exceeded the amount due under the Note, and KWP therefore was and is an oversecured creditor. The Note contained the following provision regarding liability for attorneys' fees:

In the event that suit be brought hereon, or an attorney be employed or expenses be incurred *to compel payment of this Note or any portion of the indebtedness evidenced hereby,* whether or not any suit, proceeding or any judicial or non-judicial foreclosure be commenced, the undersigned promises to pay all such expenses and reasonable attorneys' fees, including, without limitation, any reasonable attorneys' fees *incurred in any bankruptcy proceeding.*

(Emphasis added). The Note obligated Debtor to pay KWP's attorneys' fees, but it did not specifically require KWP to pay the attorneys' fees of Debtor. As discussed later, any obligation of KWP to pay Debtor's attorneys' fees arises under California law and not under the language of the Note itself.

The Note also contains a provision allowing KWP to recover default interest at a rate three percent over the normal contractual rate:

Upon default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note shall bear interest from the date of default at a default rate equal to 3% above the applicable Interest Rate ("Default Rate") and shall be immediately due and payable.

Debtor submitted deposition testimony of a representative of KWP indicating that "one of the reasons" for imposing the Default Rate "is to encourage borrowers to pay their loans on time."

Furthermore, certain individuals executed separate agreements guaranteeing payment of the indebtedness evidenced by the Note. KWP incurred approximately $51,741.91 in legal fees in pursuing collection from the individual guarantors.

---

1. Honorable Whitney Rimel, Bankruptcy Judge for the Eastern District of California, sitting by designation.

2. KWP purchased the note executed in favor of the Bank by Debtor and is the assignee of the Bank's claims against Debtor. The Bank and KWP are hereinafter jointly identified as "KWP."

After KWP commenced foreclosure proceedings against the Dodge Property, Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.[3] More than two months after the petition date, KWP filed a motion for relief from stay in order to pursue its remedies under the Note and Deed of Trust. During the course of the Chapter 11 case, Debtor acquired two separate parcels of real property adjacent to the Dodge Property. Debtor then filed its plan of reorganization ("Plan"), which contemplated the development of the newly-acquired parcels.

In order to obtain construction financing, Debtor proposed to subordinate KWP's secured interest in the Dodge Property and to grant KWP subordinated encumbrances against the additional property. The Plan did not purport to cure immediately the outstanding indebtedness to KWP, although it did allow KWP to receive all cash on deposit ($397,041.75) in a cash collateral account. Instead, under the Plan, Debtor was to execute a new note in the amount of KWP's allowed claim. Unlike the Note, the new note was not secured by a first deed of trust on the Dodge Property. Moreover, the term of the new note was ten years (with twenty-year amortization), even though the Note had already fully matured.

KWP opposed the Plan. The bankruptcy court confirmed the Plan over KWP's objections and denied KWP's motion for relief from stay. The order denying relief from stay and the order confirming the plan are final.

Approximately seven months after entry of an amended order confirming the Plan (and eleven months after the hearing at which the court indicated that the Plan would be confirmed), Debtor still had not finalized the proposed loan documentation, including the new note and deed of trust.

Consequently, KWP filed a motion for an order resolving KWP's objections to Debtor's proposed loan documentation and setting the amount of KWP's claim ("Post–Confirmation Motion"). In its various responses to the Post–Confirmation Motion, Debtor objected to KWP's claim.[4] Debtor argued that (1) KWP's claim should be disallowed in its entirety because of purported bad faith actions of KWP's predecessor in interest,[5] (2) KWP's claim should be offset by the legal fees incurred by Debtor in defending the motion for relief from stay and in obtaining confirmation of the Plan over KWP's objections, (3) KWP's claim should not include interest calculated at the Default Rate, and (4) KWP's claim should not include legal fees incurred in pursuing collection from guarantors of the Note.

After the parties filed numerous pleadings with respect to the Post–Confirmation Motion, the bankruptcy court held a hearing and overruled each of Debtor's grounds for objecting to KWP's claim. On February 24, 2000, the court entered an order conditionally approving loan documents submitted by Debtor, and granting KWP an allowed claim in the amount of $3,051,661.64. Debtor timely appealed.

## II.

### ISSUES

1. Did the bankruptcy court err in denying Debtor's request for an award of attorneys' fees, pursuant to California Civil Code section 1717 ("section 1717"), for successfully defending against KWP's motion for relief from stay and for successfully obtaining an order confirming the Plan notwithstanding KWP's objections?

2. Did the bankruptcy court err in imposing the Default Rate pursuant to sec-

---

3. Unless otherwise indicated, all section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

4. The amount of KWP's allowed claim needed to be fixed before the new note could be executed.

5. This ground for objecting to KWP's claim has been abandoned by Debtor on appeal.

tion 506(b) when determining the amount of KWP's claim?

3. Did the bankruptcy court err in allowing, pursuant to section 506(b), KWP's attorneys' fees arising from legal services rendered in connection with efforts to collect amounts due under the Note from non-debtor guarantors?

## III.

### STANDARD OF REVIEW

 The issues presented in this appeal primarily involve questions of statutory interpretation. Statutory interpretations are questions of law and are reviewed *de novo*. *Citybank v. Udhus (In re Udhus)*, 218 B.R. 513, 515 (9th Cir. BAP 1998) ("The denial of a claim for default interest is based on statutory interpretation."). Questions of contract interpretation are subject to *de novo* review unless extrinsic evidence was introduced on issues such as intent. *Ankeny v. Meyer (In re Ankeny)*, 184 B.R. 64, 68 (9th Cir. BAP 1995).

 A trial court's findings of fact are reviewed under the clearly erroneous standard. *Id.* An appellate court "will not disturb a bankruptcy court's award of attorneys' fees unless the bankruptcy court abused its discretion or erroneously applied the law." *Kord Enterprises II v. California Commerce Bank (In re Kord Enterprises II)*, 139 F.3d 684, 686 (9th Cir.1998).

## IV.

### DISCUSSION

1. *Debtor's Request for Attorneys' Fees Under California Civil Code Section 1717*

A. *Overview*

 To the extent that federal bankruptcy law governs the disposition of the substantive matters in this case, it also governs the right of a party to recover attorneys' fees. Under the Bankruptcy Code, there is no general right to recover attorneys' fees; nonetheless, the Bankruptcy Code does include provisions for attorneys' fees under certain limited circumstances. In contrast, when parties are litigating matters in which state or other non-bankruptcy law controls, state law [6] governs the parties' right to recover attorneys' fees.

Debtor seeks an award of attorneys' fees in uniquely bankruptcy matters, relying not upon bankruptcy authority, but instead attempting to import state law's reciprocity provisions into this exclusive federal setting. Such an award of fees would be contrary to controlling authority in this circuit and to sound bankruptcy policy. As a preliminary matter, a brief review of the availability of attorneys' fees in bankruptcy cases is appropriate.[7]

B. *Attorneys' Fees Under The Bankruptcy Code*

In *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 741 (9th Cir.1985), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985), the Ninth Circuit held that federal law governs entitlement to attorneys' fees when federal law governs the substantive issues before the court. The Ninth Circuit concluded that an action on a motion for relief from stay involves the application of federal bankruptcy law, and that federal bankruptcy law—which did not provide for the recovery of such fees—governed the right of the parties to recover the attorneys' fees for litigating the stay action. The Ninth Circuit stated:

State law, therefore, is not ordinarily applied by the bankruptcy court to an

---

6. For convenience, state law and other nonbankruptcy law will be referred to in this opinion as "state law."

7. The following analysis omits any discussion of fees available to trustees' or creditors committees' professionals employed under sections 327 or 1103(a).

action brought pursuant to 11 U.S.C. § 362(d). The [creditors'] action, brought pursuant to 11 U.S.C. § 362(d), was predicated solely upon a federal statute and California state law was not applied to any of the substantive issues involved. Thus, the bankruptcy court should not have applied the state substantive law awarding attorney's fees in this case. It is true that the bankruptcy court has authority to apply either state substantive law or federal substantive law, but the choice depends on the nature of the action involved. (Citations omitted). When, as here, federal and not state law governed the substantive issues involved in the [creditors'] motion, the bankruptcy court should not have awarded attorney's fees pursuant to a state statute.

*Id.* at 740–41. *See also Renfrow v. Draper,* 232 F.3d 688, at 695–96 (9th Cir.2000) (when issues in litigation involve application of purely federal bankruptcy law, no attorneys' fees may be awarded absent specific Bankruptcy Code authorization).

"No general right to attorney [sic] fees exists under the Bankruptcy Code." *Ford v. Baroff (In re Baroff),* 105 F.3d 439, 441 (9th Cir.1997). *See also Renfrow* at 693 ("There is no general right to recover attorney's fees under the Bankruptcy Code."); *Kord Enterprises II,* 139 F.3d at 687 (same). Nevertheless, even though no general right to attorneys' fees exists under the Bankruptcy Code, the Code does include provisions for attorneys' fees under specific circumstances. For example, an oversecured creditor may recover its reasonable attorneys' fees if its agreement with the debtor contains a clause permitting recovery of such fees. *See* 11 U.S.C. § 506(b); *see also Meritor Mortgage Corp. v. Salazar (In re Salazar),* 82 B.R. 538,

540 (9th Cir. BAP 1987). In addition, an individual injured by a willful violation of the automatic stay may recover attorneys' fees. *See* 11 U.S.C. § 362(h).

#### C. *Attorneys' Fees Under State Law*

■ A "prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law *if state law governs the substantive issues raised in the proceedings."* *Baroff,* 105 F.3d at 441 (emphasis added). Recently, in *Renfrow,* the Ninth Circuit directed that in an action involving mixed bankruptcy and state law issues (nondischargeability of obligations arising under a state court divorce decree), a bankruptcy court must conduct an issue-by-issue inquiry and allocate an award of attorneys' fees "solely to the extent they were incurred in litigating state law issues." *Renfrow* at 694. *Renfrow* thus clarified the analysis in *Baroff,* in which the court awarded prevailing party attorneys' fees under section 1717's reciprocity provisions [8] to a debtor who defeated a nondischargeability action against him where the document containing the attorneys' fee clause played an integral role in the proceedings (*Baroff,* 105 F.3d at 442). *See also, American Express Travel Related Services Co. v. Hashemi (In re Hashemi ),* 104 F.3d 1122, 1127 (9th Cir.1996) (creditor entitled to attorneys' fees in nondischargeability action to the extent incurred litigating the question of debtor's breach of contract).

In *Johnson,* the Ninth Circuit held that state law should not govern attorneys' fees when federal law governs the substantive issues before a court. The Ninth Circuit further held that a motion for relief from stay is not an "action on a contract" to which section 1717 should be applied. Accordingly, the court reversed a bankruptcy

---

8. Section 1717(a) provides in part:
 (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.
 *See* Cal. Civ.Code § 1717(a) (West 1998).

court's order awarding the debtors attorneys' fees incurred in opposing the creditors' unsuccessful motion for relief from the automatic stay. In so holding, the court stated:

> Stay litigation is limited to issues of the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization. Hearings on relief from the automatic stay are thus handled in a summary fashion. (Citation omitted.) The validity of the claim or contract underlying the claim is not litigated during the hearing. The action seeking relief from the stay is not the assertion of a claim which would give rise to the right or obligation to assert a counterclaim. (Citations omitted.) Thus, the state law governing contractual relationships is not considered in stay litigation.

*Johnson*, 756 F.2d at 740.

Similarly, the Ninth Circuit has held that an undersecured creditor who was the prevailing party in a plan confirmation battle is not entitled to attorneys' fees. Citing *Johnson*, the court in *Fobian v. Western Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153 (9th Cir.1991), held that a Chapter 12 confirmation dispute is not "an action on a contract," but rather "involves a unique, separate area of federal law." There, litigation involved solely issues of federal bankruptcy law where a bank sought proper application of sections 506 and 1225. It was not a traditional "action on the contract." Consequently, the court declined to award the prevailing undersecured creditor its attorneys' fees.[9]

### D. *Debtor's Claim for Attorneys' Fees.*

■ Since the underlying disputes in the present case (plan confirmation and relief from stay) are governed by bankruptcy law, Debtor cannot recover its attorneys fees. Nevertheless, Debtor attempts to incorporate state substantive law in the context of the bankruptcy case.

Because the Note did not provide Debtor with the right to collect attorneys' fees, Debtor argues that its right to obtain such fees arises under state law (specifically, here, section 1717). Section 1717 imposes reciprocity in contracts with respect to liability for attorneys' fees; if a contract provides that one of the parties can recover fees (such as KWP in this case), either party (whether specified as the fee beneficiary in the contract or not) can recover fees if it is the prevailing party "in any action on" the contract. Debtor argues that because it successfully defended against a motion for relief from stay filed by KWP and successfully confirmed a plan of reorganization notwithstanding KWP's objections, it was the prevailing party for the purposes of section 1717. In doing so, Debtor attempts to avoid *Johnson*, which is precisely on point and which the court below properly followed.

The bankruptcy court correctly observed that the fight over confirmation was not an action on the Note, but an action on an entirely different contract: the Plan. The bankruptcy court's observation is particularly astute here, where the Plan contemplated abrogation of the Note and the substitution of a new obligation and security interest in lieu of Debtor's prior contracts with KWP.

Debtor argues that *Johnson* and *Fobian* are distinguishable because the relevant contracts in those cases *may* not have had a clause explicitly allowing recovery of fees for services incurred in the context of a bankruptcy case.[10] Debtor contends that

---

**9.** Of course, an oversecured creditor may have been able to recover such fees pursuant to section 506(b), assuming the fees were reasonable and permitted under the contract. *Meritor Mortgage Corp. v. Salazar (In re Salazar)*, 82 B.R. 538, 540 (9th Cir. BAP 1987); *Kord Enterprises II*, 139 F.3d at 686–87. Because the creditor was undersecured in *Fobian*, section 506(b) was not considered.

**10.** Debtor has admitted that the *Johnson* and *Fobian* decisions do not disclose the specific terms of the attorneys' fees clauses at issue in those cases, and those cases may have indeed

because the Note in this case specifically allows recovery of bankruptcy-related attorneys' fees, Debtor is entitled to fees incurred in fighting the motion for relief from stay. Debtor's claimed entitlement to fees arises solely from the fee-shifting provisions of section 1717. It maintains that because KWP chose to include language in its contract entitling it to recover fees incurred in bankruptcy-related matters, Debtor should likewise be entitled to reciprocal fees under section 1717.

Debtor's argument is directly contrary to the holding of *Johnson.* In *Johnson,* the Ninth Circuit specifically held that section 1717 is inapplicable to matters involving substantive bankruptcy law. Moreover, the *Johnson* court rejected a similar argument that the creditor's entitlement to fees under section 506(b) (and thus the contract) conferred similar entitlement upon the debtors. *Johnson,* 756 F.2d at 741, n. 3. If Congress intended debtors to recover fees for successfully defending motions for relief from stay, it could have included a provision allowing such recovery. Congress has chosen to allow fees to debtors and creditors in other circumstances. *See* 11 U.S.C. §§ 362(h) and 506(b). Absent such a Congressional mandate, the state law of attorneys' fees is simply inapplicable in a matter involving bankruptcy substantive law. *Johnson,* 756 F.2d at 741. We will not convert a bankruptcy issue into a state law question—with the attendant section 1717 reciprocity—based how the parties drafted the Note. That would elevate form (of the Note) over substance (of the bankruptcy disputes). Stated otherwise, the nature of the issues litigated arise solely in bankruptcy and federal bankruptcy attorneys'

fees policy is clear and well-settled and may not be abrogated by artful drafting.

Debtor also argues that it may recover the fees in question under section 541(a) as "property of the estate." Debtor's reasoning is circular. If Debtor were entitled to fees under section 1717, that entitlement would be property of the estate. Under *Johnson,* however, section 1717 does not accord Debtor the right to recover the fees, and section 541(a) provides no greater entitlement than section 1717 does.

Citing *In re McGaw Property Management, Inc.,* 133 B.R. 227 (Bankr.C.D.Cal. 1991), Debtor argues that section 506(b) does not prevent it from recovering fees to which it is entitled under section 1717. This argument assumes that Debtor is entitled to fees under section 1717, which it is not. Moreover, section 506(b) governs the rights of a secured creditor to recover on its claim and is simply inapplicable here. Section 506(b) does not determine whether a debtor is entitled to recover its fees and costs. *See Johnson,* 756 F.2d at 741, n. 3 (Ninth Circuit rejected debtors' "inapposite" argument that they could recover attorneys' fees because creditor could recover similar fees under section 506(b)). Similarly, *McGaw* is inapplicable, because it pertains to the right of an oversecured creditor to recover fees under section 506(b).

Because *Johnson* is controlling authority and is on point, the bankruptcy court correctly denied Debtor's request for attorneys' fees.[11] Accordingly, we affirm this aspect of the bankruptcy court's decision.

## 1. *KWP's Entitlement to Default Interest*

---

involved clauses allowing the lender to recover fees in a bankruptcy matter.

**11.** We note that even if *Johnson* did allow Debtor to recover its attorneys' fees, there would be a question whether Debtor demonstrated that it was the "prevailing party" on the motion for relief from stay. In fact, the bankruptcy court did not immediately deny the motion, and continued the motion to be heard in conjunction with the plan confirma-

tion hearing. The existence of the motion could have operated as a mechanism for KWP to ensure more efficient administration of the estate and quicker proposal and prosecution of a plan. Under these circumstances, if we agreed with Debtor's application of section 1717, we would have to remand for a determination of whether Debtor was in fact the "prevailing party."

■ Section 506(b) [12] entitles the holder of an oversecured claim to recover interest on its claim, but does not specify the rate of interest to be applied. "[B]ankruptcy courts considering the issue [of whether or not to allow default interest] generally apply the contract rate subject to rebuttal based upon equitable considerations." *Casa Blanca Project Lenders, L.P. v. City Commerce Bank (In re Casa Blanca Project Lenders, L.P.)*, 196 B.R. 140, 143 (9th Cir. BAP 1996). In the Ninth Circuit, bankruptcy courts have been unable to award default interest when a debtor cures defaults on or before the plan effective date with respect to its obligations to a creditor. *Great Western Bank & Trust v. Entz–White Lumber & Supply, Inc. (In re Entz–White Lumber & Supply, Inc.)*, 850 F.2d 1338 (9th Cir.1988).[13] In this case, however, Debtor did not cure its defaults on the KWP obligation on or before the effective date of the Plan.[14]

Where a debtor does not cure defaults, a creditor is entitled to default interest upon demonstrating that the default interest meets certain requirements. Courts vary as to how they allocate the burden of proof regarding the right to default interest. In *Casa Blanca*, we imposed the evidentiary burden on a creditor to demonstrate the reasonableness and compensatory nature of the default rate. *Casa Blanca*, 196 B.R. at 146–47. Other decisions, including circuit court decisions, allow default interest at the contract rate unless the debtor overcomes an initial presumption that the contractual default rate is reasonable. *See Southland Corp. v. Toronto–Dominion (In re Southland Corp.)*, 160 F.3d 1054 (5th Cir.1998); *In re Terry Ltd. P'ship*, 27 F.3d 241, 243 (7th Cir.1994), *cert. denied*, 513 U.S. 948, 115 S.Ct. 360, 130 L.Ed.2d 313 (1994) (applying a presumption in favor of the contractual rate "subject to rebuttal based upon equitable considerations"); *Equitable Life Assurance Society v. Sublett (In re Sublett)*, 895 F.2d 1381 (11th Cir. 1990); *Bradford v. Crozier (In re Laymon)*, 958 F.2d 72, 74 (5th Cir.1992), *cert. denied*, 506 U.S. 917, 113 S.Ct. 328, 121 L.Ed.2d 247 (1992).

Regardless of how the burden of proof is allocated, KWP is not automatically entitled to default interest at the contract rate. Under *Casa Blanca*, "consideration of whether a given default rate is within the range of a generally acceptable level of interest is not determinative." *Casa Blanca*, 196 B.R. at 146–47. The creditor must demonstrate that the default rate is equivalent to damage by "evidence or proof of a tangible nature." *Id.* at 147. KWP produced no such proof in this case. It argued that the Default Rate is reasonable because it falls within a generally-accepted range, and because the same rate of default was approved for the new note. These arguments do not demonstrate, with

---

12. Section 506(b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

13. In *Entz–White*, the Ninth Circuit held that, if a debtor cures a default as part of a plan of reorganization, the debtor "is entitled to avoid all consequences of the default—including higher post-default interest rates." *Id.* at 1342. But the future of that holding is in doubt, as the 1994 amendments to section 1123 added subsection (d) to provide that the amount necessary to cure a default under a Chapter 11 plan shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law. The legislative history to section 1123(d) states that the "provision will be applicable prospectively only, i.e., it will be applicable to all future contracts..." H.R. 103–834, 103d Cong., 2d Sess. § 39, 140 Cong. Rec. 10770 (1994).

14. Under the Plan, KWP was not returned to pre-default status. A new note, with a new maturity date, was substituted in lieu of the prior obligation. Moreover, the new note is not secured in the same manner or with the same priority as the Note (which is already fully matured). Therefore, because Debtor's Plan did not cure the default under the Note, *Entz–White* is inapplicable.

the specificity required by *Casa Blanca*, that the Default Rate compensated KWP for actual losses.

■ Even if we were to apply the presumption of validity of the Default Rate, as set forth in *Southland* and *Terry Ltd.*, Debtor overcame that initial presumption by introducing deposition testimony by a representative of KWP that "one of the reasons" for imposing the Default Rate is to encourage timely payment. By showing that the rate was—at least in part—punitive in nature, Debtor shifted the burden to KWP to demonstrate that the default rate reasonably compensated it for losses arising from the default. *Casa Blanca*, 196 B.R. at 146. KWP failed to demonstrate that the default rate reasonably compensated it for losses arising from the default.

Consequently, we reverse and remand for a determination of this issue. If the Default Rate compensates KWP for actual loss, the bankruptcy court may award such interest.

## 2. *KWP's Entitlement to Attorneys' Fees for Pursuing Guarantors*

■ A creditor is entitled to attorneys' fees if (1) its claim is an allowed secured claim, (2) the creditor is oversecured, (3) the fees are reasonable, and (4) "the fees are provided for under the agreement." *Kord Enterprises II*, 139 F.3d at 687. In this case, Debtor has not disputed existence of the first three requisites. Rather, the appeal concerns one issue only: does the Note allow recovery of attorneys' fees incurred in pursuing collection from guarantors?

■ The Note provides that KWP may recover attorneys' fees "incurred to compel payment of this Note *or any portion of the indebtedness evidenced thereby.*" (Emphasis added). While the Note does not specify that fees for pursuing collection

from guarantors are recoverable, it does permit recovery of fees related to the collection of the indebtedness evidenced by the Note. In pursuing the guarantors, KWP was seeking payment of at least a portion of the indebtedness evidenced by the Note. Consequently, under the terms of the Note itself, KWP is entitled to those fees. Debtor has cited no California law or other non-bankruptcy authority to support its narrow reading of the Note's attorneys' fee provisions, and we know of none.

The case of *In re Lederman Enterprises, Inc.*, 106 B.R. 674 (Bankr.D.Colo.1989), involved a similar attorneys' fees clause. In *Lederman*, the debtor executed a note agreeing "to reimburse Holder for all reasonable costs, including attorneys fees incurred to collect this note or any installments if not paid when due." *Id.* at 677. The deed of trust also permitted the creditor to recover attorneys' fees in any action affecting or relating to the promissory note. *Id.* The *Lederman* court permitted, under section 506(b), the oversecured creditor to recover from the debtor fees incurred in pursuing collection against individual guarantors, although it did adjust the fees for reasonableness.[15] *Id.* at 685.

Debtor cites *In re Hyer*, 171 B.R. 67 (Bankr.W.D.Mo.1994), in support of its contention that the Note should have contained an explicit clause allowing recovery of fees relating to actions on the guaranty. *Hyer*, however, does not support Debtor's broad assertion. In *Hyer*, the security agreement did specify that the creditor could recover fees relating to any action on the agreement or any other agreement, note or guaranty executed by the debtor. The court held that the broad terms of the contractual agreement permitted the creditor to recover its fees expended in guaranty litigation. *Hyer*, however, did not limit its holding only to those cases in which guaranties or guarantors are specified in the attorneys' fees clause. A court must

---

**15.** Here, Debtor is not challenging reasonableness of the fees, at least with respect to time entries and necessity of work. Rather,

its appeal is limited to the sole issue of whether the Note permits recovery of any fees relating to guarantor actions.

look to the language of the relevant contractual instrument, and determine its breadth based on the language contained therein. In this case, the Note permitted recovery of attorneys' fees for any action seeking recovery of the indebtedness evidenced by the Note, and any action against the guarantors fell within the scope of that language. Consequently, the bankruptcy court did not err in including in the allowed claim the attorneys' fees incurred in pursuing the guarantors.

## V.

### CONCLUSION

The bankruptcy court did not err in denying Debtors' requested fees under California Civil Code section 1717 or in allowing KWP to recover attorneys' fees incurred in pursuing collection from guarantors. Accordingly, we AFFIRM on those grounds. The bankruptcy court did err, however, in awarding default interest without a sufficient demonstration by KWP that the Default Rate was reasonable and compensatory in nature. We therefore REVERSE this aspect of the court's decision, and REMAND for a determination of these issues.