[No. A113024. First Dist., Div. Three. Feb. 22, 2007.]

CIRCLE STAR CENTER ASSOCIATES, L.P., Plaintiff and Appellant, v. LIBERATE TECHNOLOGIES, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

## Counsel

Ellman, Burke, Hoffman & Johnson, Howard N. Ellman, Thomas Paine, Kenneth N. Burns and Michael P. Brody for Plaintiff and Appellant.

Skadden, Arps, Slate, Meagher & Flom, Garrett J. Waltzer and Amy S. Park for Defendant and Respondent.

OPINION

**SIGGINS, J.**—On appeal from a final judgment, Circle Star Center Associates, L.P. (Circle Star), challenges orders (1) sustaining a demurrer to its cause of action for defamation; and (2) striking its claim for attorney fees. We affirm in part and reverse in part.

## BACKGROUND

### I. *The Complaint*

The facts are taken from the complaint, the lease, and the opinion of the bankruptcy court.[1]

Circle Star owns two office buildings in San Carlos encumbered by a loan from Teachers Insurance and Annuity Association of America (TIAA). In 1999, Liberate Technologies (Liberate) became the major tenant when it leased over 180,000 square feet of office space in the two buildings. The lease term runs until 2010.

In 1999, comparable commercial space was in high demand and short supply. By 2003 market conditions had changed considerably and Liberate sought to get out of the lease, but Circle Star rejected Liberate's overtures to renegotiate.

In October 2003 Liberate informed TIAA that Circle Star had defaulted on and breached its lease with Liberate; that Circle Star's conduct threatened "bad faith waste and economic waste"; and that its "misconduct" was imperiling TIAA's security interest. Specifically, Circle Star identified such statements in an October 30, 2003, letter from Liberate's outside counsel that memorialized Liberate's attempts to renegotiate the lease and obtain Circle Star's consent to a confidentiality agreement covering the negotiations. Circle Star's rejection of Liberate's attempts was characterized as "not only contrary to clearly established commercial dispute resolution and work-out procedures and California and Federal law relative to settlement discussions, it is a default by [Circle Star] under the Lease in that it clearly constitutes a breach of the covenant of good faith and fair dealing applicable to all contracts governed by California law. Moreover, such position may well ultimately result in the tort of bad faith waste and economic waste on the part of [Circle

---

[1] The lease is incorporated by reference in the complaint. (See generally 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 388, p. 486.) The trial court took judicial notice of the bankruptcy court's opinion dismissing the bankruptcy petition filed by Liberate Technologies. So will we. (See Evid. Code, § 451, subd. (a).)

Star] with respect to the property. We hereby notify you of such default and demand an immediate cure thereof. Moreover, we also hereby notify you that pursuant to the express agreement between Liberate and TIAA, we are copying TIAA with this notice of default." TIAA was copied with the letter.

Circle Star's complaint alleges that the statements in Liberate's October 30, 2003, letter were defamatory. They were made maliciously, knowing they were false, or with reckless disregard for their truth, and Liberate defamed Circle Star to injure Circle Star's relationship with TIAA and imperil its financing. It was alleged the threat of an impaired relationship with TIAA would coerce Circle Star to relieve Liberate of its lease obligations.

In April 2004 Liberate stopped paying rent, moved out, and filed a chapter 11 bankruptcy petition. At the time of the bankruptcy filing, Liberate had liabilities between $59 million and $167 million and about $212 million in unrestricted cash. It had received an offer to buy its assets as a going concern that could yield a net return, after paying all liabilities, of at least $130 million plus stock in the acquiring company. Liberate's chapter 11 plan reflected surrender of the leased premises and sought to reduce its future rent obligation to Circle Star from $45 million to $8 million.

Circle Star successfully moved to dismiss the bankruptcy case on the grounds that it was filed in bad faith. The bankruptcy court ruled that "a present need for bankruptcy relief is a central element of good faith. [Bankruptcy] decisions also hold that a solvent entity generally has need for bankruptcy relief only to avoid liquidation of its business assets. The present case should be dismissed because Debtor is very solvent, very liquid, and can sell its assets as a going concern outside of bankruptcy." The court added that "[b]ecause the petition never should have been filed, it is appropriate to restore Debtor and Circle Star to the status quo ante as much as possible. Thus, the accompanying order provides that the dismissal shall unwind Debtor's rejection of the Circle Star lease."

The bankruptcy case was dismissed and the bankruptcy stay terminated in September 2004. Liberate continued to refuse to pay rent.

Circle Star filed this case for breach of lease, defamation, and conversion. The complaint sought more than $2.4 million for unpaid rent, over $1.9 million for unreplenished draws by Circle Star against Liberate's security deposit,[2] more than $1.2 million in attorney fees incurred by Circle Star in

---

[2] Liberate's security deposit was in the form of a letter of credit for approximately $8.8 million. The lease authorized Circle Star to draw on the letter of credit if Liberate defaulted and required Liberate to replenish the security deposit within 10 days.

the bankruptcy case, general and punitive damages for defamation, and other costs and attorney fees incurred in prosecuting claims against Liberate for breach of the lease.

## II. *The Demurrer and Motion to Strike*

Liberate demurred to the cause of action for defamation and moved to strike Circle Star's claim for attorney fees incurred in the bankruptcy proceedings.[3] The court considered the challenged statements to be nonactionable expressions of opinion and sustained the demurrer without leave to amend. It also concluded that federal bankruptcy law precluded Circle Star's claim for fees incurred in the bankruptcy case because the fees were expended litigating primarily federal law issues.

The remaining claims and issues were eventually resolved through settlement, cure or trial. Circle Star filed a timely appeal from the judgment and challenges the rulings on the demurrer and motion to strike.

## DISCUSSION

### I. *The Demurrer*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *Attorney Fees*

Circle Star also challenges the order striking its request for attorney fees incurred in obtaining dismissal of the Liberate bankruptcy. Despite an attorney fees clause in the lease that provides that fees may be awarded to the prevailing party in any action arising out of the lease, the trial court ruled those fees were not recoverable as a matter of law because fees are not obtainable under federal bankruptcy law when bankruptcy litigation involves primarily federal issues. Circle Star asserts it has a right to pursue the bankruptcy-related fees in state court as a matter of contract because dismissal of the bankruptcy case restored to the parties their preexisting rights and remedies. We agree.

 When a case remains within the jurisdiction of the bankruptcy court, the rule is well settled: A party may not recover attorney fees incurred in

---

[3] The fee claim was part of Circle Star's cause of action for breach of lease. Liberate also filed an unsuccessful special motion to strike the defamation claim under the anti-SLAPP statute (strategic lawsuit against public participation). (Code Civ. Proc., § 425.16.)

[*] See footnote, *ante,* page 1203.

litigating purely bankruptcy law issues unless fees are authorized under a specific provision of the Bankruptcy Code.[5] (*In re Hassen Imports Partnership, supra,* 256 B.R. 916 (*Hassen*).) This is even true where the bankruptcy litigation concerns a contract that contains a provision entitling the prevailing party to fees. (*Ibid.*)

■ Liberate, however, cites no law that extends this principle to preclude a party from pursuing in a postbankruptcy, state court contract action the fees incurred obtaining the dismissal of a bankruptcy proceeding. The cases relied upon by the trial court (*Hassen, supra,* 256 B.R. 916; *In re Baroff* (9th Cir. 1997) 105 F.3d 439; *Renfrow v. Draper* (9th Cir. 2000) 232 F.3d 688) concerned claims for fees raised *in* bankruptcy proceedings; none involved the rights of the parties to seek fees in state court *after* a bankruptcy was dismissed. The difference in posture is key. First, Circle Star's suit is not against a bankruptcy estate and a fee award would not diminish a bankruptcy estate to the detriment of other creditors. Second, Liberate's bankruptcy was dismissed. A dismissal, unless otherwise ordered, "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." (11 U.S.C. § 349(b)(3).) This provision "obviously contemplates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy. After an order of dismissal, the debtor's debts and property are subject to the general laws, *unaffected by bankruptcy concepts.*" (*In re Income Property Builders, Inc.* (9th Cir. 1982) 699 F.2d 963, 965, fn. omitted, italics added.) " 'The basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.' "[6] (*Id.* at p. 965, fn. 1, citing H.R.Rep. No. 95-595, 95th Cong., 2d Sess., reprinted in 1978 U.S. Code Cong. & Admin. News, pp. 5787, 6294.) If Liberate's debts and property rights were restored to the status they were in before it filed for bankruptcy, presumably those rights would include rights—and obligations—under the lease.

Liberate's reliance on *Gene R. Smith Corp. v. Terry's Tractor, Inc.* (1989) 209 Cal.App.3d 951 [257 Cal.Rptr. 598], does not strengthen its position. There, after the bankruptcy court dismissed a creditor's involuntary bankruptcy petition, the debtor sued the creditor for malicious prosecution and abuse of process. The court held that the exclusive federal jurisdiction over

---

[5] In contrast, a prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees incurred litigating state law issues. (*In re Hassen Imports Partnership* (9th Cir. 2000) 256 B.R. 916, 921–922.)

[6] In contrast, in the more usual scenario when a bankruptcy is *discharged* after the bankruptcy proceedings are completed, the debtor's debts are usually discharged and the proceeds of any nonexempt assets divided among creditors. (*In re Income Property Builders, Inc., supra,* 699 F.2d at p. 963.)

bankruptcy petitions precluded a collateral suit against the creditor in state courts. Following Ninth Circuit authority, it reasoned that to permit state tort actions in addition to federal statutory penalties for bankruptcy petitions brought in bad faith would confuse "the uniform law to be applied in bankruptcy proceedings" and potentially deter debtors and creditors from utilizing the bankruptcy system. (*Id.* at pp. 954–955.) " 'Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage awards that might be available in state court tort suits. Even the mere possibility of being sued in tort in state court could in some instances deter persons from exercising their rights in bankruptcy. In any event, it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized.' " (*Id.* at p. 954, italics omitted, quoting *Gonzales v. Parks* (9th Cir. 1987) 830 F.2d 1033, 1035–1036.)

■ In contrast, permitting Circle Star to seek contractual attorney fees incurred in securing the dismissal of Liberate's bankruptcy proceeding does not interfere with the uniformity required by federal bankruptcy law or risk conflating federal procedural remedies with state tort lawsuits. Nor does permitting the recovery of contractual attorney fees interfere with the bankruptcy court's control of its proceedings. It could be argued that the threat of a state court award of contract-based attorney fees incurred in bankruptcy litigation might discourage some from seeking the protection of the bankruptcy court. ■ But contractual liability for such attorney fees that are incidental to a bankruptcy primarily arises in two ways: either, as here, in a lawsuit filed following dismissal of a bankruptcy, or with the bankruptcy court's acquiescence that a lawsuit outside of bankruptcy may proceed. (See 11 U.S.C. § 362.) When fees are awarded by a state court in either situation, they are awarded as a matter of contract to a party who prevails in the state litigation, and they are awarded as an item of costs, not as a penalty.[7] (Civ. Code, § 1717.) For these reasons, potential liability for contract-based attorney fees does not have the same disincentive specter that tort liability and damages for misuse of bankruptcy processes would have. The decisions in *Gene R. Smith Corp.* and *Gonzales* are distinguishable and do not control the outcome of this case.

---

[7] At oral argument Liberate asserted that if Circle Star wished to obtain attorney fees for its effort in securing dismissal of Liberate's bankruptcy it could have sought them in the bankruptcy court as a penalty or sanction pursuant to Federal Rules of Bankruptcy, rule 9011. But such an award is predicated on a showing that the assessed party has engaged in frivolous, unnecessary or meritless litigation, and such fees are awarded for the primary purpose of deterring future conduct rather than as compensation to the moving party. (*Matter of Reynolds* (Bankr. S.D.Iowa 1990) 117 B.R. 452, 455.)

Liberate also argues that the language in the attorney fees clause in the lease does not permit an award of fees incurred in bankruptcy proceedings. Here, too, we disagree. The lease states: "If Tenant or Landlord brings *any action* for any relief against the other, declaratory or otherwise, arising out of this Lease . . . the losing party shall pay to the prevailing party a reasonable sum for attorney's fees . . . ." (Italics added.) Liberate argues this language "clearly and unambiguously" excludes fees incurred in the bankruptcy because under California law, a bankruptcy is considered a "special proceeding" rather than an "action."[8]

■ Circle Star responds that extrinsic evidence shows the contracting parties intended "any action" to encompass any case filed in court; that the term "any action" is reasonably susceptible to a broader definition encompassing bankruptcy proceedings; and that the trial court cannot resolve whether the contract is ambiguous on this point without considering the extrinsic evidence offered in opposition to the motion to strike. We agree. "Where the meaning of the words used in a contract is disputed, the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning. [Citations.] Indeed, it is reversible error for a trial court to refuse to consider such extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears to be clear and unambiguous on its face. Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912 [75 Cal.Rptr.2d 573]; see *Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.* (1999) 74 Cal.App.4th 1232, 1240–1241 [88 Cal.Rptr.2d 777].)

■ While intent is to be inferred solely from the written provisions of the contract " ' " ' *if possible*' " ' " (*Gil v. Mansano* (2004) 121 Cal.App.4th 739, 743 [17 Cal.Rptr.3d 420], italics added), this is not such a case. The court was required to consider Circle Star's extrinsic evidence before deciding whether the contract language was reasonably susceptible to its suggested interpretation. (*Morey v. Vannucci, supra,* 64 Cal.App.4th at p. 912.) That requirement precludes rejection of Circle Star's interpretation on a motion to strike, the grounds for which must appear "on the face of the challenged pleading or from any matter of which the court is required to take judicial notice." (Code Civ. Proc., § 437, subd. (a).)

---

[8] Code of Civil Procedure section 22 defines an action as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Under Code of Civil Procedure section 23, "Every other remedy is a special proceeding."

## DISPOSITION

We reverse in part and affirm in part. On remand, the court is directed to deny Liberate's motion to strike the allegations supporting the claim for attorney fees incurred in the bankruptcy proceedings. In all other respects, the judgment is affirmed. Each party is to bear its own costs on appeal.

McGuiness, P. J., and Pollak, J., concurred.