[No. B197234. Second Dist., Div. Five. Dec. 30, 2008.]

CHINESE YELLOW PAGES COMPANY, Plaintiff and Appellant, v. CHINESE OVERSEAS MARKETING SERVICE CORPORATION et al., Defendant and Respondent.

COUNSEL

Lewis R. Landau; Law Offices of James T. Grant, James T. Grant; Murtagh & Associates and Paul G. Murtagh for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Hall R. Marston and Douglas J. Collodel for Defendant and Respondent.

OPINION

**TURNER, P. J.—**

## I. INTRODUCTION

Code of Civil Procedure[1] section 685.040 allows a judgment creditor to recover reasonable and necessary attorney fees incurred in "enforcing" a judgment under specified circumstances. Plaintiff and judgment creditor, Chinese Yellow Pages Company (the creditor), appeals from an order denying a request pursuant to section 685.040 for postjudgment fees and costs incurred in a bankruptcy proceeding brought by defendant and judgment debtor, Chinese Overseas Marketing Service Corporation (the debtor). We conclude section 685.040 can extend to reasonable and necessary attorney fees and costs incurred in postjudgment bankruptcy proceedings under the circumstances of this case. Because the trial court ruled it had no jurisdiction to award reasonable and necessary attorney fees and costs, we reverse the order under review. Upon remittitur issuance, the trial court is to exercise its discretion and determine the amount of reasonable and necessary attorney fees and costs payable to the judgment creditor.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## II.  BACKGROUND

The present case has a complexity to it not normally found in civil appeals. At issue is a motion for attorney fees and costs filed in the trial court. The attorney fees and costs were incurred though in the chapter 11 proceedings conducted in the United States Bankruptcy Court for the Central District of California.[2] As will be noted, there were two state court lawsuits and a chapter 11 federal bankruptcy proceeding. Events in the trial court overlapped with those in the chapter 11 proceeding in federal court. Further, an appeal was pending before us while proceedings were transpiring concurrently in the trial and bankruptcy courts. And even in the chapter 11 proceeding, various motions were pending at one time. And sometimes a motion would be granted but the formal order would not be entered until days later. We will describe chronologically the course of the various proceedings but with the caveat that sometimes events were transpiring in different jurisdictions at the same time.

The current appeal has its origins in a false advertising and unfair competition lawsuit brought by the debtor against the creditor entitled *Chinese Overseas Marketing Service v. Chinese Yellow Pages Inc.* (Super. Ct. L.A. County, 1999, No. KC032014). This lawsuit settled on October 27, 2000. The settlement agreement contains a provision awarding attorney fees to the prevailing party in any action to enforce or interpret it. Judgment was entered on the stipulation as well as a related permanent injunction.

Thereafter, the creditor filed the current action against the debtor. The creditor claimed the debtor had, among other things, misrepresented the nature of the October 27, 2000 settlement agreement to potential customers. On January 6, 2006, the trial court entered a judgment after a jury verdict in the amount of $4.25 million in compensatory damages jointly and severally against the debtor and its owner Alan Kao. The jury also awarded punitive damages of $500,000 against Mr. Kao and $250,000 against the debtor. Meanwhile, between December 29, 2005, and January 11, 2006, Mr. Kao transferred $1.12 million from defendant to his sister-in-law Li Wen Chen.

On January 13, 2006, two days after the date of the last payment by Mr. Kao to Ms. Chen, the debtor filed a voluntary chapter 11 bankruptcy petition. Any effort to collect on the judgment was subject to the automatic stay. (11 U.S.C. § 362(a).) On January 20, 2006, the bankruptcy court set the first creditors' meeting for March 6, 2006. On January 24, 2006, the chapter 11 status conference order was issued, which required the filing of status

---

[2] There are two trial courts whose rulings are pertinent to this case—the state superior and federal bankruptcy courts. For purposes of clarity, the superior court will be referred to as the trial court. The bankruptcy court will be referred to by that name.

reports and established procedures for requesting approval of a disclosure statement and plan. On January 26, 2006, the debtor filed its motion to pay prepetition employee compensation and taxes. On January 27, 2006, the debtor filed its chapter 11 bankruptcy schedules.

On February 3, 2006, the creditor moved for an order setting an examination requiring document production pursuant to Federal Rules of Bankruptcy, rule 2004[3] by the debtor and its accountant, Kent Cheng. According to the creditor's counsel, Lewis R. Landau, such a procedure is the functional equivalent of a judgment debtor examination under California's debt collection law. On February 13, 2006, the debtor filed three employment applications, which sought to employ: the law firm of SulmeyerKuptez as general bankruptcy counsel; the law firm of Lim, Ruger & Kim (the Lim firm) as special litigation counsel; and Mr. Cheng as its accountant. (The application to employ the law firm of SulmeyerKuptez as general bankruptcy counsel was later granted and the applications as to the Lim firm and Mr. Cheng were later withdrawn.) On February 17, 2006, the bankruptcy court issued an order setting an examination and production schedule later in the month. On February 21, 2006, the debtor filed its chapter 11 status report and the first status conference was held on March 9, 2006. On February 27, 2006, the

---

[3] Federal Rules of Bankruptcy, rule 2004 states: "(a) Examination on motion. [¶] On motion of any party in interest, the court may order the examination of any entity. [¶] (b) Scope of examination. [¶] The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan. [¶] (c) Compelling attendance and production of documentary evidence. [¶] The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending. [¶] (d) Time and place of examination of debtor. [¶] The court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates, whether within or without the district wherein the case is pending. (e) Mileage. [¶] An entity other than a debtor shall not be required to attend as a witness unless lawful mileage and witness fee for one day's attendance shall be first tendered. If the debtor resides more than 100 miles from the place of examination when required to appear for an examination under this rule, the mileage allowed by law to a witness shall be tendered for any distance more than 100 miles from the debtor's residence at the date of the filing of the first petition commencing a case under the Code or the residence at the time the debtor is required to appear for the examination, whichever is the lesser."

debtor, rather than produce the documents subject to the February 17, 2006 order, moved for a protective order staying production for 60 days so it could move to dismiss the chapter 11 proceeding it voluntarily commenced. The debtor's protective order motion was later denied. Both Mr. Cheng and Mr. Kao appeared for the examinations. According to Mr. Landau, the creditor's counsel, Mr. Cheng and Mr. Kao never produced the documents required by the February 17, 2006 examination and document production order. Mr. Cheng produced some documents. Mr. Cheng and Mr. Kao were deposed.

On March 3, 2006, the bankruptcy court entered an order granting partial relief from the automatic stay pursuant to stipulation. Relief from the automatic stay was granted to allow the following posttrial motions to be litigated: a judgment notwithstanding the verdict motion; a motion to tax costs; and an attorney fees motion. Also, the debtor was permitted to appeal from the January 6, 2006 judgment. On March 8, 2006, Mr. Kao paid the plaintiff $4,341,533.29 on behalf of himself and the debtor. Mr. Kao received an acknowledgment of full satisfaction as to himself but not as to the debtor.

On March 13, 2006, the debtor moved to dismiss its chapter 11 case. The dismissal motion outlined a procedure for paying off the attorney fees award that was owed to the creditor. The hearing on the debtor's dismissal motion was set for April 6, 2006. In the interim between March 13 and April 6, 2006, the creditor deposed declarants who executed declarations in support of the debtor's pending dismissal motion. Mr. Landau stated that "certain declarants" did not actually execute their declarations. Rather, according to Mr. Landau, the declarants' signatures were forged by an employee of the debtor and those declarations were then withdrawn. The creditor and Quebecor World (USA), Inc., opposed the debtor's dismissal motion. The debtor's dismissal motion was denied; an order to that effect was entered on April 11, 2006. While the debtor's dismissal motion was pending, on March 31, 2006, the creditor filed its proof of claim in the sum of $1,353,000. The claim of Quebecor World (USA), Inc., had been assigned to Joseph W. Browning, trustee of the Joseph P. Browning 1996 Descendant's Trust.

On April 10, 2006, the debtor filed a motion to employ the law firm of Sedgwick, Detert, Moran, and Arnold (the Sedgwick firm) to provide appellate court representation in the then pending appeal from the judgment entered in the trial court on January 6, 2006. The debtor's motion, which was opposed by the creditor, was not set for hearing. (The motion was later refiled by the trustee and granted.) On April 13, 2006, the trial court awarded the creditor $1,216,414.65 in attorney fees. This attorney fees award was added to the January 6, 2006 judgment in favor of the creditor.

On April 14, 2006, the creditor moved for the appointment of a bankruptcy trustee. According to Mr. Landau, assigning a trustee is the functional equivalent of the appointment of a receiver under California law. In connection with the trustee appointment motion, the service of subpoenas led to the discovery that Mr. Kao, as noted, transferred $1.12 million from the debtor's accounts to his sister-in-law, Ms. Chen, in the days leading to the filing of the chapter 11 petition. The transfers from Mr. Kao to Ms. Chen were not reflected on the debtor's schedules. The debtor then stipulated to the appointment of a chapter 11 trustee. An order approving the appointment of a chapter 11 trustee was entered on May 8, 2006. Pursuant to the recommendation of the United States Trustee, Jeffery Golden was appointed as the chapter 11 trustee in an order entered on May 12, 2006. On May 19, 2006, the creditor moved to remove Mr. Golden as the trustee. The creditor asserted that Mr. Golden was the lawyer for Howard M. Ehrenberg, a member of SulmeyerKuptez, the debtor's bankruptcy counsel. On June 9, 2006, the creditor's motion to disqualify Mr. Golden as the trustee was denied.

While the disqualification motion was pending, on May 26, 2006, Mr. Golden, now represented by his general bankruptcy counsel, the law firm of Danning, Gill, Diamond & Kollitz, moved for permission to use cash collateral; a matter which was stipulated to by the creditor. On May 31, 2006, Mr. Golden filed a second motion for permission to use cash collateral and the creditor immediately stipulated to the request being granted. Mr. Golden then secured a June 8, 2006 order setting July 7, 2006, as the bar date for all prepetition and administrative expenses incurred through May 12, 2006. On June 9, 2006, the creditor and Mr. Golden stipulated that approximately $51,000 held by the Los Angeles County Sheriff's Department be released. The released funds were delivered to the trustee.

As noted previously, both Mr. Browning and the creditor had filed claims. On June 14, 2006, Mr. Golden filed: objections to the claims of the creditor and Mr. Browning; a complaint against the creditor to recover prebankruptcy judgment liens and preferential transfers; and a complaint against Mr. Kao, his sister in law, Ms. Chen, and the creditor to recover the $1.12 million transferred from the debtor between December 29, 2005, and January 13, 2006.

On July 18, 2006, Mr. Golden's objection to the creditor's claim was overruled and an order to that effect was entered on August 3, 2006. The objection to Mr. Browning's claim was overruled on September 26, 2006. Mr. Golden, the trustee, and the debtor argued that the creditor and Mr. Browning could not vote in the trustee election scheduled for June 16, 2006. The Lim firm voted for Mr. Golden while the creditor and Mr. Browning

voted for Frank Secor. The United States Trustee declared the election disputed and on August 8, 2006, the bankruptcy court ruled that the creditor and Mr. Browning could not vote in the trustee election. Hence, Mr. Golden was elected as the trustee.

Meanwhile, while the issue of the election of the trustee was litigated, the creditor moved for an order compelling a Federal Rules of Bankruptcy, rule 2004 examination of the Lim firm and document production. The Lim firm had filed an unspecified claim. Ultimately, subject to a protective order, the bankruptcy court ordered the Lim firm to undergo a Federal Rules of Bankruptcy, rule 2004 examination and produce documents. Further, while the issue of the trustee election was being litigated in the bankruptcy court, on June 22, 2006, based upon newly discovered evidence, the creditor moved for a new trial on its disqualification motion which had resulted in the June 9, 2006 order denying its motion to disqualify Mr. Golden. According to the creditor, Mr. Golden had "connections" with Mr. Ehrenberg, a member of SulmeyerKuptez. Mr. Landau declared the new trial motion was based on the following: "[The] new evidence consisted of [Mr. Golden's] fraudulent transfer complaint, which failed to also name SulmeyerKuptez . . . , another recipient of the same funds that [Mr. Golden] contended were fraudulently transferred and which gave rise to [Mr. Golden's] complaint against [the creditor]. [The creditor] argued that [Mr. Golden's] failure to name [SulmeyerKuptez] as an indispensable party to the fraudulent transfer action proved [Mr. Golden's] inability to fulfill his duties based on his connections to [SulmeyerKuptez]." Later, on August 8, 2006, the creditor's new trial motion on the trustee disqualification motion was denied. Additionally, while the bankruptcy court was finally resolving the trustee issue, the creditor and Mr. Golden entered into the third stipulation to allow the debtor to use cash collateral for operating expenses.

Also, beginning July 7, 2006, the creditor and the Lim and the Sedgwick firms filed requests for payment of postpetition administrative expenses. Two accounting firms filed similar requests. As part of the litigation over postpetition expenses, the creditor objected to the Lim firm's request. The trustee objected to various requests for payment of administrative expenses. Ultimately, on September 6, 2006, the bankruptcy court denied certain compensation requests.

Meanwhile, on August 16, 2006, the creditor proposed a chapter 11 plan. The creditor proposed a "liquidating chapter 11 plan" under which all of the debtor's assets would be sold at an auction. Proceeds from the proposed auction would be used to pay off the debtor's creditors in the priority provided by law. Mr. Landau explained that the auction is the functional equivalent of a sheriff's sale under state law pursuant to section 701.510 et seq. The trustee

filed a competing plan. Under this competing plan, Mr. Kao would "buy his business back" after paying all claims owed by the debtor. Under the trustee's plan, the creditor's unpaid judgment would be paid in full. The bankruptcy court directed the creditor and the debtor to "reconcile" their disclosure statements and proposed plans.

On September 19, 2006, the debtor filed its second motion to dismiss its chapter 11 case. The creditor filed a conditional nonopposition to the dismissal motion subject to certain technical issues being resolved. Mr. Golden sought permission to borrow $1 million against the debtor's assets in order to pay all creditors, including the creditor. Among the issues requiring resolution was that the $1 million loan would be entitled to priority over all other claims including that of the creditor. If the loan was approved as proposed by Mr. Golden, the creditor would lose the priority of its judgment lien. According to Mr. Landau, if the structuring of the transaction resulted in the creditor being paid in full, it would have no objection to the dismissal. After the hearing was continued, the trustee joined in the dismissal request on condition that all creditors were to be paid in full. The trustee indicated that sufficient funds would be borrowed to reserve payment of the creditor's claim for postjudgment enforcement attorney fees if allowed by the state court. The creditor then filed a motion "on a contingent basis" to convert the case to a chapter 7 bankruptcy.

On December 7, 2006, the bankruptcy court conducted a hearing on both the dismissal and conversion motions. The bankruptcy court denied the creditor's motion to convert the chapter 11 proceeding to one under chapter 7. The bankruptcy court stated: "This is an operating business. It's an operating business that has been beset, prior to the commencement of the bankruptcy case and after the commencement of the case, by ceaseless, extensive, expensive, complex litigation, first within the context of the state court action, and, after bankruptcy, in every conceivable procedural context, by [the creditor], the party who brings this motion. [¶] So what I have is a Chapter 11 Trustee who is attempting to find the best way to administer the bankruptcy case, and that that task has been—'infinitely' is too strong an adverb, but 'immeasurably' may not be, because we don't know if there a measure— immeasurably made more difficult by the continuing warfare-like litigation of [the creditor]. [¶] Then we have—and this includes contesting Trustee election, contesting employment applications, bringing, you know, competing disclosure statement and plan. In every possible way, [the creditor] has made plain that its purpose is to, if possible, not get its claim treated or paid, but to shut down the business of the Debtor. You know, it seems to me that that was clear almost from the commencement of the bankruptcy case."

As these events were transpiring in the bankruptcy court, on November 20, 2006, the creditor filed a supplemental cost memorandum in the trial court.

The supplemental cost memorandum sought attorney fees and costs for in the amount of $553,211.56 pursuant to sections 685.040 and 708.010. The creditor requested attorney fees and costs from January 13 through November 17, 2006, pursuant to section 685.040. In response, the debtor moved to tax costs and fees. Among other things, the debtor asserted that the creditor was required to file a noticed motion in order to seek fees under section 685.040. The creditor opposed the motion to tax costs.

In response to the debtor's argument that a noticed motion was required, on December 11, 2006, the creditor filed a noticed attorney fees motion in the trial court. The motion sought attorney fees and costs in the amount of $582,787.44 for the period from January 13 through December 10, 2006. The creditor argued it was entitled to reasonable and necessary attorney fees and costs in enforcing the judgment against the debtor in both the state and bankruptcy courts. Citing *In re Mirzai* (C.D.Cal. 2001) 271 B.R. 647, 652, the creditor argued that the dismissal of the bankruptcy proceedings restored the property rights of the parties to the position they were in at the commencement of the case such that its postjudgment rights and remedies were fully restored.

The debtor and the bankruptcy trustee opposed the attorney fees motion. They argued that the attorney fees issue should be resolved by the bankruptcy rather than the trial court. The debtor argued that, to the extent the creditor sought to enforce a prepetition judgment, the attorney fees request violated the automatic stay under title 11 United States Code section 362(a). The debtor further argued: on April 13, 2006, the creditor had refused the tender of a cashier's check in the full amount of fees owed under the judgment; the creditor had resisted the dismissal of the bankruptcy petition; the motion claimed fees and costs which the creditor was not entitled to receive; and the bankruptcy court's findings that the creditor's actions were designed to put the debtor out of business were binding on the trial court.

While the creditor's attorney fees motion was pending in the trial court, on December 28, 2006, the bankruptcy court entered the following: "Order Approving Trustee's Motion for Order Authorizing Alternatively: (1) Borrowing on Secured and Unsecured Basis and Dismissal of Case with Payment in Full to Creditors, or (2) Approving Certain Sale Procedures." Paragraph 8 of the bankruptcy court's December 28, 2006 order provided that $517,000 was to be held by the trustee in reserve to pay any additional fees or costs which might be awarded by the trial court. Paragraph 8 of the December 28, 2006 order states: "Contemporaneously with the Close of Escrow [the creditor] shall be paid by wire transfer from escrow the amount set forth in item 20 of Exhibit '4' hereto. Such wire transfer shall also include the Superior Court's allowed amount of additional fees and costs pending approval referred to in

item 14 of Exhibit '4.' In the event that the Superior Court has not allowed such fees and costs as of the Close of Escrow, $517,000 shall be transferred to the Trustee to be held in a segregated account and paid within five business days of allowance thereof by the Superior Court. Any of the foregoing payments set forth in this paragraph shall be without prejudice to the rights of the Trustee pre-dismissal, and the Debtor post-dismissal, to pursue appeals and, in the event that the appeals are successful, to pursue all available remedies of recovery. No fees and costs of professionals shall be paid absent Court allowance pursuant to separate order(s)."

On January 4, 2007, the trial court conducted a hearing on the creditor's attorney fees motion, which had been filed on December 11, 2006, pursuant to section 685.040. At the January 4, 2007 hearing, the trial court expressed frustration with the issue of the effect of the automatic say on the creditor's attorney fees award motion. The trial court stated it would prefer to have the bankruptcy court provide an advisory opinion as to the creditor's rights to attorney fees. When the scope of the question to be submitted to the bankruptcy court was discussed, the following occurred: "Mr. Landau: Does the automatic stay—does the pendency of the automatic stay during the pendency of the chapter 11 preclude an award of fees under 685.040? [¶] The court: Does he believe he shouldn't decide that because it's a question of California law? Does he believe the amount of fees is unreasonable for any reason, including, in his judgment, that the fees were not incurred to enforce the judgment, within his understanding of bankruptcy law, which I can either find is helpful or not based on my understanding of California law. [¶] I'd like to hear from him on that. I'd like to hear from him whether he believes there was an agreement to pay these fees of $517,000. Maybe he says, I have no idea; I wasn't involved in it. But does he think there was an agreement? . . . How does he think I should construe his order? And I know you drafted it, but he did sign it. Paragraph 8 of his order, which contemplates the possibility that I would allow fees, does he mean there that, . . . under California law, it may be proper; and if so, what was the basis for that?" The trial court further expressed the view it was "the wrong person" to decide the merits of the creditor's attorney fees motion. Hearing on the creditor's attorney fees motion was continued until February 22, 2007, to await the bankruptcy court's response to the various inquiries posited by the trial court.

In accordance with its December 28, 2006 order, however, the bankruptcy court entered a formal order dismissing the chapter 11 case on January 23, 2007. On February 20, 2007, the bankruptcy court refused to issue an advisory opinion. The bankruptcy court ruled there was no live case or controversy within its jurisdiction.

On February 22, 2007, the hearing on the creditor's attorney fees and costs motion resumed in the trial court. The trial court stated it had not decided

whether anything the creditor did was reasonable and necessary. Rather, the trial court only ruled it lacked authority to award the fees because they were incurred during the pendency of the automatic stay. The creditor's attorney fees motion was denied. Also, the trial court granted the debtor's motion to tax costs because the creditor was not entitled to receive postjudgment costs and fees under section 685.040 during the pendency of the chapter 11 bankruptcy proceeding. On February 28, 2007, the creditor filed a timely appeal from the February 22, 2007 order denying the attorney fees and taxing fees. On August 21, 2007, we affirmed the judgment in all respects, including the attorney fees award, except as to the finding of a contract breach. (*Chinese Yellow Pages, Inc. v. Chinese Overseas Marketing Service Corp.* (Aug. 21, 2007, B190315) [nonpub. opn.].)

## III.   DISCUSSION

### The Bankruptcy Code Did Not Prevent the Trial Court from Ruling on the Merits of the Creditor's Section 685.040 Attorney Fees Motion.

#### 1.   Section 685.040

At issue is whether the trial court properly refused to award any reasonable and necessary attorney fees and costs pursuant to section 685.040 for litigation occurring in the bankruptcy court. The trial court ruled no fees or costs were recoverable under section 685.040, which provides: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." Because the trial court ruled that it lacked authority to award the fees as a matter of law, its ruling is subject to de novo review. (*Berti v. Santa Barbara Beach Properties* (2006) 145 Cal.App.4th 70, 74 [51 Cal.Rptr.3d 364]; see also *Exarhos v. Exarhos* (2008) 159 Cal.App.4th 898, 903 [72 Cal.Rptr.3d 409]; *Drybread v. Chipain Chiropractic Corp.* (2007) 151 Cal.App.4th 1063, 1069–1070 [60 Cal.Rptr.3d 580].)

The Enforcement of Judgments Law, of which section 685.040 is a part, adopted in 1982 and effective July 1, 1983, consists of sections 680.010 through 724.260. (§ 694.010, subd. (a); *Gonzalez v. Toews* (2003) 111 Cal.App.4th 977, 980 [4 Cal.Rptr.3d 434]; *Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546 [39 Cal.Rptr.2d 432].) When originally

adopted, section 685.040 provided that *costs* incurred in enforcement of a judgment were recoverable: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law." (Stats. 1982, ch. 1364, § 2, pp. 5070, 5081.)

The 1992 amendment to section 685.040 providing for attorney fees was adopted in response to the decision in *Chelios v. Kaye* (1990) 219 Cal.App.3d 75, 79–81 [268 Cal.Rptr. 38]. In *Chelios*, the judgment was entered in favor of the plaintiffs, which included a contractual attorney fees award. The Court of Appeal described what occurred once the state court judgment was entered as follows: "On June 14, 1985, an abstract of judgment was recorded against the real property of the judgment debtors. The judgment debtors thereafter formed D.W.G.K. Restaurants, Inc. (the corporation), doing business as Jimmy's Family Restaurants. On December 12, 1985, the corporation filed chapter 11 bankruptcy. On April 28, 1986, certain real property owned by the corporation was sold free and clear of liens pursuant to an order of the bankruptcy court. The Chelioses' judgment lien attached to those proceeds. [¶] On September 15, 1988, the bankruptcy court distributed $95,586.27 plus interest to the Chelioses." (*Id.* at p. 77.) The plaintiffs' subsequent attorney fees motion pursuant to title 11 United States Code sections 503(b)(3)(D)[4] and 506(b)[5] was denied by the bankruptcy court. (*In re D.W.G.K. Restaurants, Inc.* (Bankr.S.D.Cal. 1988) 84 B.R. 684, 686–691.) The plaintiffs then discovered the automatic stay was not in effect and moved for attorney fees in state court for legal costs incurred pursuant to the attorney fees clause in the contract. The postjudgment fees sought by the plaintiffs were for services provided during the efforts to enforce the judgment in state and bankruptcy courts. (*Chelios v. Kaye, supra,* 219 Cal.App.3d at pp. 77–78.)

The Court of Appeal held that no postjudgment fees, either those incurred in the state or bankruptcy courts, could be recovered pursuant to section 685.040. Relying on *Coughlin v. Blair* (1953) 41 Cal.2d 587, 598 [262 P.2d

---

[4] Title 11 United States Code section 503(b)(3)(D) provided in 1998 as it does now: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including— [¶] . . . [¶] (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by— [¶] . . . [¶] (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title . . . ."

[5] Title 11 United States Code section 506(b) provided in 1998 as it does now: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."

305], the Court of Appeal reasoned: the plaintiff's contract-based claims had been reduced to a final, nonappealable judgment; all of the plaintiffs' prior contractual rights merged into and were extinguished by the monetary judgment; thereafter the plaintiffs had only those rights as are set forth in the judgment itself; and the contract had no remaining validity because it had been merged into the judgment. (*Chelios v. Kaye, supra,* 219 Cal.App.3d at p. 80.) The Court of Appeal concluded: "In short, the judgment extinguished all further contractual rights of the [plaintiffs], including the contractual attorney's fees clause. (Cf. *Le Breton* v. *Stanley Contracting Co.* (1911) 15 Cal.App. 429, 434–435 [114 P. 1028] [contractually specified interest rate terminated on date judgment entered, and interest on judgment thereafter governed solely by statutory interest rate applicable to judgments]; Civ. Code, § 3289(a).)" (*Ibid.*) Thus, the plaintiffs could not recover pursuant to section 685.040 any postjudgment attorney fees incurred in either the state or bankruptcy court.

■ In response to the *Chelios* opinion, the Legislature in 1992 adopted the third sentence in the current provision of section 685.040, which provides for a postjudgment attorney fees award under specified circumstances. (Stats. 1992, ch. 1348, § 3, p. 6707.) The express purpose of the 1992 amendment to section 685.040 was to provide for postjudgment attorney fees incurred in enforcing the judgment, thus abrogating the *Chelios* holding, which deprived a creditor of fees incurred in state and federal courts. (Legis. Counsel's Dig., Assem. Bill No. 2616 (1991–1992 Reg. Sess.) 4 Stats. 1992, Summary Dig., pp. 623–624; Off. of Sen. Floor Analyses, analysis of Assem. Bill No. 2616 (1991–1992 Reg. Sess.) as amended Aug. 25, 1992, pp. 1–4; Rep. on Sen. Amends. of Assem. Bill No. 2616 (1991–1992 Reg. Sess.) as amended Aug. 12, 1992, p. 1; Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2616 (1991–1992 Reg. Sess.) as amended Aug. 25, 1992, pp. 2, 5–6; Assem. Com. on Judiciary, Republican analysis of Assem. Bill No. 2616 (1991–1992 Reg. Sess.) as amended May 13, 1992, p. 1; Assem. Com. on Judiciary, Minority Analysis of Assem. Bill No. 2616 (1991–1992 Reg. Sess.) as amended Apr. 20, 1992, p. 1; Assem. Subcom. on Administration of Justice, Analysis of Assem. Bill No. 2616 (1991–1992 Reg. Sess.) as amended Apr. 20, 1992, pp. 2–3.) Based on the foregoing, we conclude section 685.040 can permit the recovery of reasonable and necessary attorney fees and costs incurred in enforcing a judgment. The express language of section 685.040 extends to legal expenses incurred in the enforcement of a judgment. We turn now to whether reasonable and necessary attorney fees and costs incurred during a chapter 11 bankruptcy proceeding are recoverable pursuant to section 685.040.

### 2. Nothing in the bankruptcy law prevented the trial court from reaching the merits of the creditor's attorney fees and costs motion

■ Relying principally upon Ninth Circuit authority, the debtor contends that the creditor may not recover for reasonable and necessary attorney fees and costs incurred litigating bankruptcy-related issues during the chapter 11 proceedings. Also, the debtor argues that the fees and costs were incurred during the pendency of the automatic stay. Further, the debtor asserts the trial court had no authority to impose any fees or costs because they were incurred in the chapter 11 proceeding. These contentions have no merit, as federal bankruptcy law does not affect the power of a trial court to impose reasonable and necessary attorney fees and costs pursuant to a state statute such as section 685.040 after the automatic stay has expired, as occurred here.

The dispositive authority is *Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.* (2007) 549 U.S. 443, 448–454 [167 L.Ed.2d 178, 127 S.Ct. 1199, 1204–1207] (*Travelers*). In *Travelers, supra*, 549 U.S. at page 445 [127 S.Ct. at p. 1202], the Supreme Court considered whether federal bankruptcy law prevented an unsecured creditor from recovering attorney fees authorized by a prepetition contract and incurred in postpetition litigation. At issue was the validity of the following Ninth Circuit rule articulated in the case of *In re Fobian* (9th Cir. 1991) 951 F.2d 1149, 1153: "[W]here the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party. [*In re Coast Trading Co., Inc.* (9th Cir. 1984) 744 F.2d 686, 693] (refusing to award fees where creditor brought a nondischargeability action); *Grove v. Fulwiler (In re Fulwiler),* 624 F.2d 908, 910 (9th Cir.1980) (refusing to award fees for creditor's action under Section 546); *see also* [*In re Johnson*] 756 F.2d 738, 741–42 (9th Cir. 1985) (because creditor's request for relief from the automatic stay pursuant to Section 362(d) was not an 'action on the contract,' debtor was not entitled to attorneys' fees for defense against the request)." The precise issue before the Supreme Court was the vitality of the foregoing analysis in *Fobian*. (*Travelers, supra*, 549 U.S. at pp. 454–456 [127 S.Ct. at pp. 1207–1208].)

*Travelers* involved the filing of an amended claim in bankruptcy court based upon an attorney fees clause in an indemnity agreement. (*Travelers, supra*, 549 U.S. at pp. 445–448 [127 S.Ct. at pp. 1202–1203].) A Ninth Circuit panel held no fees could be awarded because they were incurred litigating strictly bankruptcy law issues. (*Id.* at pp. 447–448 [127 S.Ct. at p. 1203].) The Supreme Court began its analysis by reference to what is called the "American Rule," which prevents a prevailing litigant from recovering attorney fees except when authorized by an ' "enforceable contract' " or

a statute. (*Id.* at p. 448 [127 S.Ct. at p. 1203]; see *Fleischmann Corp. v. Maier Brewing* (1967) 386 U.S. 714, 717 [18 L.Ed.2d 475, 87 S.Ct. 1404].) The Supreme Court then described its prior jurisprudence concerning the interplay of bankruptcy and state contract law thusly: "In a case governed by the Bankruptcy Act of 1898, we observed that '[t]he character of [a contractual] obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy, either as a provable claim or by way of a lien upon specific property.' *Security Mortgage Co.* v. *Powers* [(1928)] 278 U.S. 149, 154 [73 L.Ed. 236, 49 S.Ct. 84]. Similarly, under the terms of the current Bankruptcy Code, it remains true that an otherwise enforceable contract allocating attorney's fees (*i.e.*, one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." (*Travelers, supra*, at p. 448 [127 S.Ct. at pp. 1203–1204].) The Supreme Court emphasized the enforceability of state contract law: "Indeed, we have long recognized that the ' "basic federal rule" in bankruptcy is that state law governs the substance of claims, Congress having "generally left the determination of property rights in the assets of a bankrupt's estate to state law." ' *Ibid.* (quoting *Butner* v. *United States* [(1979)] 440 U.S. 48, 57, 54 [59 L.Ed.2d 136, 99 S.Ct. 914] . . . ; citation omitted). Accordingly, when the Bankruptcy Code uses the word 'claim'—which the Code itself defines as a 'right to payment,' 11 U.S.C. § 101(5)(A)—it is usually referring to a right to payment recognized under state law. As we stated in *Butner*, '[p]roperty interests are created and defined by state law,' and '[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.' 440 U.S., at 55; accord, *Vanston Bondholders Protective Comm.* v. *Green* [(1946)] 329 U.S. 156, 161 [91 L.Ed. 162, 67 S.Ct. 237] . . . ('What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law')." (*Travelers, supra*, at pp. 450–451 [127 S.Ct. at p. 1205].) In *Butner v. United States, supra*, 440 U.S. at page 55, one of the cases cited in the foregoing quotation in *Travelers*, the Supreme Court further explained why state rather than federal bankruptcy law governs property interests: "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' "

In *Travelers*, the Supreme Court held that the Ninth Circuit's *Fobian* rule could not be sustained. This was because the *Fobian* rule, which barred the recovery of attorney fees when strictly bankruptcy issues were litigated, had no textual basis in the Bankruptcy Code: "The absence of textual support is fatal for the *Fobian* rule. Consistent with our prior statements regarding creditors' entitlements in bankruptcy, . . . we generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed. See 11 U.S.C. § 502(b). Neither the court below nor PG&E has offered any reason why the fact that the attorney's fees in this case were incurred litigating issues of federal bankruptcy law overcomes that presumption." (*Travelers, supra*, 549 U.S. at pp. 452–453 [127 S.Ct. at p. 1206], citation omitted, citing *Raleigh v. Illinois Dept. of Revenue* (2000) 530 U.S. 15, 20 [147 L.Ed.2d 13, 120 S.Ct. 1951] [state rather than federal bankruptcy law determines the burden of proof on a tax claim].)

The foregoing authority involves the merits of claims decided in bankruptcy proceedings. Nonetheless, these decisions stand for the proposition that absent a federal interest or textual basis found in the Bankruptcy Code, the present attorney fees and costs issue must be resolved under California law. Here, the chapter 11 proceedings had been dismissed and the automatic stay had expired when the attorney fees award was entered. Moreover, in paragraph 8 of the December 28, 2006 order, the bankruptcy court had set aside $517,000 to pay the creditor's attorney fees and costs if ordered by the trial court. Hence, any federal interest is more attenuated here in a postproceeding scenario than in the case of an attorney fees award issued by the bankruptcy court while insolvency proceedings are still occurring.

In *Circle Star Center Associates, L.P. v. Liberate Technologies* (2007) 147 Cal.App.4th 1203, 1206–1209 [55 Cal.Rptr.3d 232], the plaintiff leased space to the defendant. The plaintiff was able to secure a dismissal of the defendant's bankruptcy case. The plaintiff sought an award in state court under an attorney fees clause in the lease. Our colleague, Associate Justice Peter J. Siggins, wrote that since the bankruptcy proceedings had been dismissed, a state court awarding contractual attorney fees does not interfere with the estate or any federal interest. Associate Justice Siggins explained: "[P]ermitting [plaintiff] to seek contractual attorney fees incurred in securing the dismissal of [defendant's] bankruptcy proceeding does not interfere with the uniformity required by federal bankruptcy law or risk conflating federal procedural remedies with state tort lawsuits. Nor does permitting the recovery of contractual attorney fees interfere with the bankruptcy court's control of its proceedings. It could be argued that the threat of a state court award of contract-based attorney fees incurred in bankruptcy litigation might discourage some from seeking the protection of the bankruptcy court. But contractual liability for such attorney fees that are incidental to a bankruptcy

primarily arises in two ways: either, as here, in a lawsuit filed following dismissal of a bankruptcy, or with the bankruptcy court's acquiescence that a lawsuit outside of bankruptcy may proceed. (See 11 U.S.C. § 362.) When fees are awarded by a state court in either situation, they are awarded as a matter of contract to a party who prevails in the state litigation, and they are awarded as an item of costs, not as a penalty. (Civ. Code, § 1717.) For these reasons, potential liability for contract-based attorney fees does not have the same disincentive specter that tort liability and damages for misuse of bankruptcy processes would have." (*Circle Star Center Associates, L.P. v. Liberate Technologies, supra*, 147 Cal.App.4th at p. 1210, fn. omitted.) In a similar vein, recovery of reasonable and necessary attorney fees and costs pursuant to Civil Code section 1717 and Code of Civil Procedure section 685.040 after a bankruptcy proceeding has been dismissed at the debtor's request and the automatic stay has expired does not violate any federal interest. Thus, nothing in the Bankruptcy Code prevented the trial court from ruling on the creditor's section 685.040 attorney fees and costs motion.

### 3. Other issues

█ Several additional issues warrant brief comment. First, we do not resolve the issue of the amount of recoverable attorney fees and costs. The calculation of attorney fees and costs is a matter addressed to the discretion of the trial court. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 [95 Cal.Rptr.2d 198, 997 P.2d 511]; *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623–624 [134 Cal.Rptr. 602].) The trial court has never exercised its discretion and determined the amount of reasonable and necessary attorney fees and costs. This is an issue that the trial court must resolve once the remittitur issues.

There is no merit to the debtor's assertion that nothing that occurred during the chapter 11 proceedings could support a finding that reasonable and necessary attorney fees were incurred within the meaning of section 685.040. As noted, prior to the commencement of bankruptcy proceedings, between December 29, 2005, and January 13, 2006, Mr. Kao transferred $1.12 million from the debtor to his sister-in-law Ms. Chen. And as also noted, the debtor failed to list these prepetition transfers on its schedules. On March 31, 2006, the creditor filed a claim with the bankruptcy court. A prudent creditor in a chapter 11 proceeding should file a claim. (March, Cal. Practice Guide: Bankruptcy (The Rutter Group 2007) ¶ 17:111, p. 17-127 to 17-128 ["Even secured creditors should file proofs of claim to participate in a distribution under a confirmed plan of reorganization, or as an unsecured creditor with respect to a deficiency claim."].) Under most circumstances, filing a claim in a chapter 11 proceeding would be recoverable in postproceeding section 685.040 attorney fees litigation.

On the other hand, the trial court may chose to refuse to grant any fees for the creditor's June 22, 2006 new trial motion filed to set aside the June 9, 2006 order denying the initial motion to disqualify Mr. Golden as the trustee. The trial court would not be precluded from ruling that the new trial motion (or even the initial request itself) was not a reasonable or necessary litigation tactic. We cite these two examples, the creditor's filing of its claim and the new trial litigation in connection with the motion to disqualify Mr. Golden as the trustee, as examples of the questions the trial court will evaluate in assessing whether the fees and costs incurred were reasonable and necessary in whole or in part. We leave these issues, some of which are close, in the good hands of the trial court.

■ Second, there is no merit to the debtor's argument that collateral estoppel principles bar any recovery of fees. The debtor relies on the December 7, 2006 statement the bankruptcy court made while it was ruling on both the dismissal and conversion motions. As noted, the bankruptcy court stated: "In every possible way, [the creditor] has made plain that its purpose is to, if possible, not get its claim treated or paid, but to shut down the business of the Debtor. You know, it seems to me that that was clear almost from the commencement of the bankruptcy case." When the bankruptcy court made the foregoing statement, it was deciding whether to grant the debtor's dismissal and the creditor's conversion motions. In order for the bankruptcy court's conclusions to be given collateral estoppel effect, the issue here, the right to fees and costs pursuant to section 685.040, must have been the one actually litigated when the bankruptcy court ruled on the debtor's dismissal and the creditor's conversion motions. (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 387 [33 Cal.Rptr.3d 562, 118 P.3d 589]; *Todhunter v. Smith* (1934) 219 Cal. 690, 695 [28 P.2d 916].) In the bankruptcy proceeding, the issue of the extent to which the creditor was entitled to recover reasonable and necessary attorney fees and costs was not litigated. Moreover, the bankruptcy court did not state that *all* of the creditor's actions were unreasonable or calculated to destroy the debtor's enterprise. As we have noted, the filing of a claim can hardly be characterized as an effort to destroy the debtor's business. The bankruptcy court never stated, directly or indirectly, that the act of filing the claim was designed to destroy the debtor. Moreover, the uncontradicted evidence demonstrates this is an aggravated case of an effort to conceal a prepetition disbursement of cash. As noted, Mr. Kao, the debtor's owner, disbursed $1.12 million from the debtor to his sister-in-law, Ms. Chen, and concealed that fact on its schedules. No doubt, after the remittitur issues, the trial court, in the exercise of its discretion, may view the creditor's opposition to the debtor's dismissal motion and the conversion request to be unreasonable or unnecessary conduct unrelated to the legitimate enforcement of the judgment. But the debtor, at this stage of the proceedings, may not rely on the bankruptcy court's observations on

December 7, 2006, in connection with the second dismissal and conversion motions, to bar *any* recovery pursuant to section 685.040.

■ Third, we have quoted from the opinion in *Circle Star Center Associates, L.P. v. Liberate Technologies, supra*, 147 Cal.App.4th at page 1210 for the proposition that a postbankruptcy section 685.040 state court contractual attorney fees award does not interfere with the estate or any federal interest. So it is clear, we recognize that the *Circle Star Center* opinion cited a Ninth Circuit case, *In re Hassen Imports Partnership* (Bank. 9th Cir. 2000) 256 B.R. 916, 920 for what was then the following "well settled" proposition: "Debtor seeks an award of attorneys' fees in uniquely bankruptcy matters, relying not upon bankruptcy authority, but instead attempting to import state law's reciprocity provisions into this exclusive federal setting. Such an award of fees would be contrary to controlling authority in this circuit and to sound bankruptcy policy." In *Hassen Imports*, the panel reviewed the development of the Ninth Circuit rule against attorney fees being awarded pursuant to a state statute for litigation of strictly bankruptcy issues beginning in *In re Johnson, supra*, 756 F.2d at page 741, which was relied upon in the decision of *In re Fobian, supra*, 951 F.2d at page 1153. But, as previously discussed, *Fobian*, one of the cases relied upon in *Hassan Imports*, was disapproved of last year by the Supreme Court in *Travelers, supra*, 549 U.S. at pages 451–452 [127 S.Ct. at p. 1205]. The court in *Circle Star Center* cited to the Ninth Circuit rule discussed in *Hassen Imports*, which was consistent with *Fobian*. And with good reason, at the time it was the firmly established law in the Ninth Circuit. But it is clear now that *Travelers, supra*, at pages 451–452 [127 S.Ct. at p. 1205], which was decided after the *Circle Star Center* was opinion was filed, has resulted in the disapproval of the body of law adverted to in *Hassen Imports*, which was discussed in the decisions of *In re Fobian, supra*, 951 F.2d at page 1153, and *In re Johnson, supra*, 756 F.2d at page 741.

■ Fourth, for the first time in the rehearing petition, the debtor asserts because we reversed the contract breach cause of action in the prior appeal, no attorney fees are recoverable pursuant to section 685.040. As noted, the present lawsuit arises out of an alleged breach of the October 27, 2000 settlement agreement filed by the debtor. The October 27, 2000 settlement agreement of the debtor's lawsuit contains an attorney fee clause. In the present suit, the creditor sought attorney fees. When judgment was ultimately entered in the present case, it contained an attorney fee award pursuant to Civil Code section 1717. The trial court granted the creditor's attorney fee motion on April 13, 2006. On August 21, 2007, we affirmed the judgment in all respects, including the Civil Code section 1717 attorney fee award, except as to the finding of a contract breach. (*Chinese Yellow Pages v. Chinese Overseas Marketing Service Corp., supra*, B190315.) The debtor's review petition was denied by our Supreme Court. That judgment, which includes the Civil Code section 1717 attorney fee award, is final for all

purposes. (*North Beverly Park Homeowners Assn. v. Bisno* (2007) 147 Cal.App.4th 762, 769 [54 Cal.Rptr.3d 644] [once the review petition is denied by our Supreme Court, "the judgment of the trial court is final for all purposes"]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 838, pp. 902–903.) Some or all of the fees incurred during the bankruptcy proceedings, the amount we leave to the trial court to determine, were sustained enforcing the judgment, which contains a Civil Code section 1717 attorney fee award that has been affirmed. None of the fees were incurred after we reversed the contract breach cause of action on August 21, 2007. (*Chinese Yellow Pages v. Chinese Overseas Marketing Service Corp., supra,* B190315.)

■ As noted, section 685.040 expressly states a judgment creditor may recover reasonable and necessary attorney's fees incurred in enforcing a judgment. But an essential element specified in section 685.040 of recoverable reasonable and necessary fees is that the underlying judgment *must* include an award of attorney's fees pursuant to section 1033.5, subdivision (a)(10)(A). Section 1033.5, subdivision (a)(10)(A) permits the recovery of Civil Code section 1717 contractual attorney fees. (*Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 126 [70 Cal.Rptr.3d 125] ["Section 1033.5 provides that attorney fees are allowable as costs under section 1032 when authorized by contract, statute, or law, including Civil Code section 1717."]; *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 224 [64 Cal.Rptr.3d 495].) The now final judgment in this case expressly includes an award of attorney fees pursuant to section 1033.5, subdivision (a)(10)(A) and Civil Code section 1717. Thus, section 685.040 applies and the trial court, upon remittitur issuance, must proceed to exercise its discretion and fix the amount of recoverable reasonable and necessary attorney fees.

## IV. DISPOSITION

The order denying the motion for attorney fees and costs and granting the motion to tax costs is reversed. Upon remittitur issuance, the trial court shall proceed to rule on the merits of the attorney fees and costs motion. Chinese Yellow Pages Company is awarded its costs on appeal from Chinese Overseas Marketing Service Corporation.

Kriegler, J., concurred.

**ARMSTRONG, J.,** Dissenting.—I respectfully dissent.

I would affirm the order denying the motion for attorney fees and granting the motion to tax costs because the underlying judgment does not contain

contractual attorney fees as required by Code of Civil Procedure section 685.040 (section 685.040). I explain.

On page 881, *ante*, the majority wrote: "Based on the foregoing, we conclude section 685.040 can permit the recovery of reasonable and necessary attorney fees and costs incurred in enforcing a judgment. The express language of section 685.040 extends to legal expenses incurred in the enforcement of a judgment." If that were all there were to section 685.040, then I would agree with the majority that the order denying the motion for attorney fees and costs and granting the motion to tax costs should be reversed, for it is undisputed that Chinese Yellow Pages Company has incurred legal expenses in trying to enforce the underlying judgment.[1]

But there is more to section 685.040. The third sentence of section 685.040 in full is: "Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." Section 1033.5 of the Code of Civil Procedure provides that attorney fees authorized by contract are recoverable as costs. The issue here, then, is whether the judgment that underlies the order includes an award of contractual attorney fees. As explained below, we determined in the appeal from the underlying judgment that Overseas did not breach the parties' contract. Because Overseas is the prevailing party on the breach of contract cause of action, it should be awarded attorney fees and costs on that cause of action. (Civ. Code, § 1717, subd. (b)(1).) Thus, the judgment as modified by our opinion does not include contractual attorney fees and the orders appealed from should be affirmed under the authority of section 685.040.

On January 6, 2006, the trial court entered a judgment on jury verdict (the underlying judgment) which contained, among other liability findings, a finding that Overseas (Chinese Consumer Yellow Pages) breached the settlement agreement with CYP. The judgment also provided that "Plaintiffs Chinese Yellow Pages, Inc. and Chinese Yellow Pages, L.P. shall also have and recover the sum of _____ from the defendant Chinese Overseas Marketing Services Corporation, doing business as Chinese Consumer Yellow Pages, in the form of Contractual attorneys' fees." Shortly thereafter, Overseas filed a petition for bankruptcy. Following several postjudgment motions, Overseas filed a notice of appeal from the underlying judgment on April 3, 2006. The appeal is No. B190315.

---

[1] From time to time appellant and creditor Chinese Yellow Pages is referred to as CYP and respondent and debtor Chinese Overseas Marketing Service Corporation is referred to as "Overseas."

The appeal dealt with trial issues relating to the validity of the jury verdict. On August 21, 2007, we filed our opinion affirming findings that found Overseas liable for various torts, but reversing the finding of breach of contract on the ground it was not supported by substantial evidence. The question of the right to recover attorney fees incurred in the enforcement of a judgment was not discussed in our opinion. Neither was the effect of the pending bankruptcy petition on the entitlement to attorney fees discussed.

The bankruptcy petition was dismissed on January 23, 2007. Shortly thereafter, and while the appeal on the underlying judgment was pending, CYP filed a motion to recover attorney fees it had expended in attempting to enforce the judgment while Overseas was in bankruptcy. CYP's motion was based on section 685.040, which, as noted above, allows attorney fees as costs to enforce a judgment "if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of section 1033.5." (Such fees are referred to as "contractual attorneys' fees" in the underlying judgment.)

The trial court granted the motion to tax and denied CYP's motion for fees. In argument on the motion, the trial court stated, citing to section 685.040, that it was unsure whether attempts to enforce an attorney fees award in a judgment should be litigated in state court or in the bankruptcy court or whether the attorney fees issue could be litigated in the state court while a bankruptcy stay was in effect. Not receiving any assistance or objection from the bankruptcy court, the trial court, believing a stay was in effect, granted the motion to strike the cost bill and denied CYP's motion for attorney fees that were incurred in enforcing the judgment while the bankruptcy stay was believed to be in effect. (Apparently, the trial court was unaware that "On March 3, 2006, the bankruptcy court entered an order granting partial relief from the automatic stay pursuant to stipulation. Relief from the automatic stay was granted to allow the following posttrial motions to be litigated: a judgment notwithstanding the verdict motion; a motion to tax costs; and an attorney fees motion. Also, the debtor was permitted to appeal from the January 6, 2006 judgment." (Maj. opn., *ante*, at p. 873.)) Fees incurred to enforce a judgment against a bankrupt debtor while the debtor's bankruptcy is pending are recoverable under section 685.040 as costs so long as the underlying judgment includes contractual attorney fees. On February 28, 2007, CYP filed a notice of appeal No. B197234, challenging the trial court's order. (This appeal, the second one to be filed in this case, is the one we are presently considering.)

Although the trial court's order was incorrect at the time it was made because there was then an underlying nonfinal judgment outstanding that provided for contractual attorney fees in an amount to be decided later, a

supervening event establishes that the court's ultimate legal conclusion that CYP was not entitled to recover legal fees as costs under section 685.040 is indeed correct and the order granting the motion to strike and denying legal fees should be affirmed. The supervening event is our opinion deciding the appeal from the underlying judgment. As noted above, the trial court's order was made while that appeal was pending. We decided the appeal from the underlying judgment on August 21, 2007. We held that "The judgment is reversed only insofar as it finds a contract breach recurred. The judgment is affirmed in all other respects. . . ." The import of this language is explained in that opinion, where we wrote: "Thus, there is no substantial evidence a contract breach occurred. No doubt, misrepresenting the terms of a settlement agreement can be tortious; but it is not a contract breach. *The judgment must be modified to delete any reference to liability based on breach of contract.*" (Italics added.)

There are only two references to liability based on breach of contract in the underlying judgment. In paragraph 4 on page 2, the judgment states that Chinese Consumer Yellow Pages breached the settlement agreement with CYP. That establishes a liability for damages based on breach of contract. In paragraph 4 on page 4, the judgment provides that CYP shall recover costs in the form of contractual attorney fees. That also is a liability based on breach of contract. With these two references deleted, as they must be according to our opinion, the underlying judgment does not include "an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of section 1033.5." (§ 685.040.) Since the underlying judgment does not now provide for "contractual attorney fees," CYP is not entitled to recover as costs any attorney fees it incurred in attempting to enforce its judgment pursuant to section 685.040. "However, this does not mean that an award of attorney fees to the party prevailing stands after a reversal of the judgment. 'An order awarding costs falls with a reversal of the judgment on which it is based.' [Citations.] '[T]he successful party is never required to pay the costs incurred by the unsuccessful party.' [Citation.] After reversal of a judgment, 'the matter of trial costs [is] set at large.' [Citation.] Although we cannot reverse the order granting costs and fees, the trial court should do so on remand." (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284 [114 Cal.Rptr.2d 898].)

Therefore, the trial court's ruling that "no fees or costs were recoverable under section 685.040" is correct and should be affirmed, even though the trial court reached that conclusion through mistaken reasoning. We are concerned with the result, not the reasons for the result. "Although the trial court did not expressly base its ruling on Evidence Code section 352, we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm. ' " 'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and

propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for the wrong reason. If right upon any theory of law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " ' " (*People v. Geier* (2007) 41 Cal.4th 555, 582 [61 Cal.Rptr.3d 580, 161 P.3d 104].)

Therefore, I would grant the petition for rehearing and affirm the order denying the motion for attorney fees and granting the motion to tax costs and award Chinese Overseas Marketing Service Corporation its costs on appeal.

A petition for a rehearing was denied January 29, 2009, and on January 26, 2009, and January 29, 2009, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 1, 2009, S170402.